No. 86–7002. BRECHEEN v. OKLAHOMA. Ct. Crim. App. Okla. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

This Court has insisted that an accused be tried by "a public tribunal free of prejudice, passion, excitement, and tyrannical power." *Chambers* v. *Florida,* 309 U. S. 227, 236–237 (1940). We have recognized that failure to ensure the impartiality of a jury "violates even the minimal standards of due process." *Irvin* v. *Dowd,* 366 U. S. 717, 722 (1961). The Oklahoma court's denial of petitioner's unopposed motion for change of venue raises serious doubts about whether those minimal standards were met in this case. These doubts demand that we undertake two separate inquiries. First, we must consider whether and to what extent our precedents regarding jury impartiality set constitutional limits on state change of venue standards. Second, we must address the proper application of those precedents to the unique setting of capital sentencings.

I

On March 23, 1983, Marie Stubbs, wife of Hilton Stubbs, a prominent storekeeper in Ardmore, Oklahoma, was shot and killed in her home. The murder and the subsequent arrest of petitioner Robert Brecheen were the subject of extensive local newspaper and television coverage. Ardmore, which has a population of approximately 25,000, is located in Carter County, which has a population of approximately 40,000. Petitioner's attorney filed a motion, accompanied by affidavits, for change of venue from Carter County. Although the motion was unopposed, the trial judge refused to grant it after conducting *voir dire.* The jury that was finally empaneled contained one person who knew the victim, one

who knew the victim's daughter, and three who knew the victim's husband. All but one of the jurors were customers at the Stubbs' family store. Three jurors knew the prosecuting attorney and three knew officers who would testify for the prosecution. All of the jurors had heard of the case through pretrial publicity. The jury convicted petitioner of burglary and homicide and sentenced him to death.

On appeal, petitioner challenged, *inter alia*, the trial court's refusal to grant him a change of venue. The Oklahoma Court of Criminal Appeals rejected petitioner's claim, holding that "[i]t is only when a criminal defendant establishes by clear and convincing evidence that a fair trial is a virtual impossibility that such a motion should be granted." App. to Pet. for Cert. 2.

## II

This Court has established that a refusal to grant a motion for change of venue may constitute a violation of due process. See *Groppi* v. *Wisconsin*, 400 U. S. 505 (1971); *Rideau* v. *Louisiana*, 373 U. S. 723 (1963); *Irvin* v. *Dowd, supra.* A defendant seeking to establish such a violation must demonstrate either that his trial resulted in "identifiable prejudice" or that it gave rise to a presumption of prejudice because it involved "such a probability that prejudice will result that it is deemed inherently lacking in due process." *Estes* v. *Texas*, 381 U. S. 532, 542–543 (1965). In deciding whether such a presumption of prejudice is warranted, courts must examine "any indications in the totality of circumstances that petitioner's trial was not fundamentally fair." *Murphy* v. *Florida*, 421 U. S. 794, 799 (1975).

We have had little occasion to apply these basic principles to determine whether particular state standards for change of venue comport with the requirements of due process. Most of our precedents regarding due process and jury neutrality consist of careful examinations of the circumstances surrounding specific trials to determine whether they give rise to a presumption of prejudice. See, *e. g.*, *Sheppard* v. *Maxwell*, 384 U. S. 333 (1966); *Turner* v. *Louisiana*, 379 U. S. 466 (1965). Although we did strike down one state venue statute which categorically denied change of venue for misdemeanors, see *Groppi* v. *Wisconsin, supra*, we have not considered any other wholesale restrictions on venue change.

In this vacuum of constitutional precedent, States have taken divergent paths. Most States have followed the well-trod course of granting motions for venue change when the totality of the circumstances establish "'a reasonable likelihood that in the absence of such relief, a fair trial cannot be had.'" *Martinez* v. *Superior Court*, 29 Cal. 3d 574, 577–578, 629 P. 2d 502, 503 (1981) (quoting *Maine* v. *Superior Court*, 68 Cal. 2d 375, 383, 438 P. 2d 372, 377 (1968)). The *Martinez* court defined "reasonable likelihood" as a lesser standard of proof than "more probable than not." 29 Cal. 3d, at 578, 629 P. 2d, at 503. See also *People* v. *Gendron*, 41 Ill. 2d 351, 243 N. E. 2d 208 (1968) (adopting "reasonable likelihood" standard), cert. denied, 396 U. S. 889 (1969); *State* v. *Cuevas*, 288 N. W. 2d 525 (Iowa 1980) (same); *State* v. *Beier*, 263 N. W. 2d 622 (Minn. 1978) (same). Other States have decided to grant change of venue motions when the circumstances establish a substantial likelihood of prejudice. See, *e. g.*, *Commonwealth* v. *Cohen*, 489 Pa. 167, 413 A. 2d 1066, cert. denied, 449 U. S. 840 (1980). The American Bar Association has explicitly endorsed this latter approach in its Standards Relating to Fair Trial and Free Press 8–3.3(c) (2d ed. 1980). Oklahoma, however, diverges sharply from its sister States in setting a much higher threshold for granting a change of venue motion, requiring "clear and convincing evidence" that a fair trial is a "virtual impossibility."

In my view, Oklahoma's strong presumption against venue change fails to accommodate properly the concerns expressed in our due process precedents. Those precedents implicitly acknowledge that the defendant's interest in a fundamentally fair trial outweighs the State's interest in holding that trial in a particular district. Oklahoma's standard is out of step with this Court's repeated recognition that "our system of law has always endeavored to prevent *even the probability* of unfairness." *In re Murchison*, 349 U. S. 133, 136 (1955) (emphasis added), quoted in *Sheppard* v. *Maxwell*, *supra*, at 352; *Estes* v. *Texas*, *supra*, at 543. We frequently have invoked the opinion of Chief Justice Taft 50 years ago, which held that "[e]very procedure which would offer a *possible* temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey* v. *Ohio*, 273 U. S. 510, 532 (1927) (emphasis added), cited in *Irvin* v. *Dowd*, *supra*, at 722; *Estes* v. *Texas*,

*supra,* at 543. We should grant certiorari to establish clearly the minimal requirements of the Due Process Clause for state change of venue standards.

## III

Our prior precedents have left a second gap of perhaps even more importance. We have failed to give any guidance as to the circumstances that might give rise to a presumption of prejudice in the sentencing phase of a bifurcated capital trial. Our cases have dealt exclusively with factors that might influence the jury in its factfinding function when it makes determinations of guilt or innocence. We held, for example, that the pretrial broadcast of a defendant in the act of confessing to the charged crime inherently prejudiced the jury's ability to evaluate objectively his guilt. See *Rideau* v. *Louisiana, supra.* Similarly, we held that when key government witnesses doubled as official guardians of the jury during deliberations, the ability of the jury to assess witness credibility was presumptively prejudiced. See *Turner* v. *Louisiana, supra.* But the influences that might impair the truth-seeking function of the jury in guilt determinations are not identical to those that impinge on its responsibility to administer fairly the death penalty.

This case demonstrates that lack of congruence. The fact that many of the jurors knew the victim or members of the victim's family might not presumptively establish the fundamental unfairness of the guilt proceedings. There may be little reason to doubt the testimony of such jurors at *voir dire* that they could put aside their knowledge of the consequences of the crime in order to establish the facts of its commission. But the jury wears an altogether different hat when it sits as sentencer. It must make a moral decision whether a defendant already found guilty deserves to die for his crime. As we have previously recognized, the function of the sentencing jury is to "express the conscience of the community on the ultimate question of life or death." *Witherspoon* v. *Illinois,* 391 U. S. 510, 519 (1968). When a jury is composed, as this petitioner's was, of people who are personally familiar with the consequences of a defendant's crime, it cannot perform this function in an impartial manner. We held as much just last Term, when we declared that the Eighth Amendment forbids the introduction of a victim impact statement during the sentencing phase of a capital trial. We concluded that a description of the effects of the murder on the victim's family and friends

was too likely to inflame the jury and lead to a sentence based on caprice or emotion rather than reason. See *Booth* v. *Maryland,* 482 U. S. 496 (1987). Surely empaneling a jury with personal knowledge of these effects would have much the same result. The likelihood of such a result should give rise to a presumption of prejudice during the sentencing phase, just as extensive news coverage might establish that presumption in the guilt phase.

## IV

This petition raises two important issues that call for this Court's review. We must establish what the Due Process Clause requires of state legislatures and courts in formulating general standards for change of venue. Oklahoma's strong presumption against granting such motions raises serious concerns about the fundamental fairness of its criminal proceedings. In addition, we must recognize and rule on the difference between the guilt and penalty phases of a capital trial for the purpose of presuming prejudice when jury impartiality is called into question. This distinction is required not because death is a qualitatively different penalty from any other (although it is), but because the jury's function is profoundly altered when it sits as sentencer.