STATE of Minnesota, Respondent,

v.

Calvin Lamont EVERETT, Appellant.

No. C3–90–2083.

Supreme Court of Minnesota.

Aug. 9, 1991.

John M. Stuart, State Public Defender, Leslie Rosenberg, Sp. Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Lindy Jenny, Asst. County Atty., Minneapolis, for respondent.

COYNE, Justice.

Defendant Calvin Lamont Everett (a/k/a Lamont Brown), was found guilty by a district court jury of first degree murder in the execution-style shooting death of a taxicab driver during a robbery and was sentenced by the trial court to life in prison. On direct appeal to this court pursuant to Minn.R.Crim.P. 29.02, subd. 1, defendant challenges the fairness of his trial. Specifically, he points to the trial court's denial of his motion for a change of venue, denial of his motion to suppress statements he made to the police, and overruling of his objection to the prosecutor's use of peremptory challenges. He also contends certain comments made by the prosecutor in closing arguments constitute plain error. We affirm.

Shortly after midnight on January 17, 1990, defendant called the Premier Cab Company from the apartment of Elronza

(Ray) Williams at 3121 Pleasant Avenue South in Minneapolis and asked Premier to dispatch a cab to Williams' address. On entering the cab defendant sat directly behind the cab driver, Bill Nieuwsma, and Williams sat on the passenger's side of the back seat. After they traveled several blocks, defendant ordered the driver to stop the cab. Defendant then grabbed the driver's hair, pressed a handgun to his right temple, and asked where the money was located. As soon as he learned that the money was in the driver's pocket, defendant shot him in the temple. After taking the money, defendant shot the driver again, this time in the back of the head. Then the defendant left the cab.

Evidence establishing these facts included Williams' testimony, the testimony of Williams' girlfriend, evidence that defendant's fingerprints were found on the driver's side of the cab, evidence that the driver's wallet was found on an awning above the entrance to the building next door to the building where defendant lived, evidence that the driver's fare sheet listed Williams' address as the last fare, evidence that when the driver's body was discovered the cab's radio was tuned to the station defendant had requested, and evidence that the amount on the fare meter coincided with the state's theory of the crime.

 1. Defendant claims error in the denial of his pretrial motion for a change of venue from Minneapolis to Rochester because of allegedly prejudicial publicity. Although this is not a case in which massive publicity gave rise to a presumption of prejudice, *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), the trial judge could have ordered a change of venue pursuant to Rule 24.03, subd. 1, Minn.R.Crim.P., had she been "satisfied that a fair and impartial trial [could not] be had in the county in

which the case [was] pending." In this case, however, the trial court determined that the nine newspaper articles and additional television reports relating to the murder were presented in a "factual, nonprejudicial manner." The trial court is accorded broad discretion in deciding whether to grant a change of venue on this ground. *State v. Drieman*, 457 N.W.2d 703, 708 (Minn.1990). We conclude that discretion was not abused here. Furthermore, proof that the defendant "actually was prejudiced by the publicity" is prerequisite to relief on appeal. *State v. Beier*, 263 N.W.2d 622, 626 (Minn.1978). Defendant has made no showing of actual prejudice; indeed, the record indicates that defendant was not prejudiced by the publicity.[1]

2. Defendant challenges on a number of grounds the admission of statements he made to police following his arrest. Defendant was arrested a week after the murder on a probation revocation warrant, Minn. R.Crim.P. 27.04, subd. 1, issued to commence a proceeding to revoke defendant's probation in connection with an earlier robbery conviction. Following his arrest, he was given a *Miranda* warning and questioned by police about the murder for 1½ hours. Defendant waived his right to silence and his so-called *Miranda* right to counsel. *State v. Ronnebaum*, 449 N.W.2d 722, 724 (Minn.1990). Defendant said that when he took cabs he usually took Premier cabs but denied that he was in the cab or with Williams on the night in question and denied participating in the murder. Indeed, he even denied knowing Williams and denied ever having been at 3121 Pleasant Avenue. Defendant was formally charged with murder the following day, January 26, 1990, and an indictment was subsequently issued on February 6, 1990.

Defendant argues that the trial court should have suppressed the statements because (a) the probation revocation warrant

---

**1.** Various ways in which the parties and the trial court can act to protect defendants against the impact of pretrial publicity are discussed in detail in *Beier*, 263 N.W.2d at 625–27. For example, defense counsel can protect the defendant by "carefully question[ing] the prospective jurors at voir dire." *Id.* at 626. The United

States Supreme Court's recent decision in *Mu'Min v. Virginia*, —— U.S. ——, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991), discusses the federal constitutional standards for voir dire examination in this context. Those standards should be compared with the standards for jury selection set forth in Minn.R.Crim.P. 26.02.

pursuant to which he was arrested was in violation of Minn.Stat. § 609.14 (1990), (b) the arrest on the probation revocation warrant was a pretext so police could question him about the murder, and (c) the interrogation was in violation of his Sixth Amendment right to counsel (as opposed to his *Miranda* right to counsel) in connection with the proceeding for revocation of his probation. These arguments are without merit.

■ (a) The probation revocation warrant form used by the police contained preprinted language revoking probation. That language, however, was crossed out before the warrant was signed by the judge. Defendant contends that the warrant violated Minn.Stat. § 609.14, subd. 1 (1990), which provides:

> When it appears that the defendant has violated any of the conditions of probation or noninstitutional sanction, or has otherwise been guilty of misconduct which warrants the imposing or execution of sentence, the court may without notice revoke the stay thereof and probation and direct that the defendant be taken into immediate custody.

That the statute permits the court to revoke probation without notice does not mean that the issuing court must do so. In any event, Minn.R.Crim.P. 27.04, dealing with revocation of probation, sets forth the procedures adopted by this court to insure compliance with *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). These procedures "modify" section 609.14. 8 H. McCarr, *Minnesota Practice—Criminal Law and Procedure,* § 40.3 at 618 (2d ed. 1990). The warrant in this case was in compliance with the applicable rule.[2]

■ (b) Relying on *State v. Hoven,* 269 N.W.2d 849 (Minn.1978), defendant argues that his statements to the police were the suppressible product of a "pretext arrest," that is, an arrest for crime A, for which grounds exist, for the purpose of questioning the suspect about crime B, for which grounds to arrest do not exist. In *Hoven* we held that the arrest of the defendant on a traffic warrant was a "pretext arrest," that the seizure of marijuana found in open view in the defendant's truck was a suppressible fruit of the arrest, and that the subsequently obtained consent of defendant to search the trunk thoroughly was tainted. *Id.* at 853–54. In later cases, however, we have repeatedly relied upon the subsequent decision of the United States Supreme Court holding that if there is an objective legal basis for an arrest or search, the arrest or search is lawful even if the officer making the arrest or conducting the search based his or her action on the wrong ground or had an improper motive. *See, e.g., Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). Illustrative cases of this court include *State v. Rodewald,* 376 N.W.2d 416, 421 (Minn.1985), and *State v. Pleas,* 329 N.W.2d 329, 332 (Minn.1983). As at least one commentator has noted, "The United States Supreme Court has never struck down police activity as unconstitutional based on the subjective intentions of the officer in the particular case and is unlikely to do so in the near future." Butterfoss, *Solving the Pretext Puzzle,* 79 Ky.L.J. 1, 58 (1990). On a case-by-case basis the Supreme Court declares only fabricated pretexts unlawful. "Legal" pretexts—i.e., activities which can be legally justified if the actual reason for the conduct is put aside— consistently pass constitutional muster. *Id.* Defendant does not contend that this is a case of fabricated pretext. Rather, he claims that the police used a properly obtained probation revocation warrant as a pretext to arrest and question him about the murder. We need not finally decide in this case whether there may be some cases which would justify a limited exception to the *Scott* doctrine. Suffice it to say, in this case it appears that the police would have arrested defendant on a probation revoca-

---

2. As to the application of the exclusionary rule to a violation of a rule or statute, as opposed to a violation of constitution, *see State v. Mitjans,* 408 N.W.2d 824, 830 (Minn.1987) (police violation of statute governing right of non-English-speaking suspect to interpreter does not require suppression); *State v. Lien,* 265 N.W.2d 833, 840–41 (Minn.1978) (nighttime execution of search warrant was a statutory violation not mandating exclusion of the evidence seized).

tion warrant in any event, and the trial court was justified in determining that the arrest was not a pretextual arrest.

 (c) Finally, defendant contends that the statements made during his un-counseled custodial interrogation immediately following his arrest pursuant to the probation violation warrant violated his constitutional right to counsel pursuant to the Sixth Amendment of the United States Constitution and article one, section six of the Minnesota Constitution (as opposed to his *Miranda* right to counsel) because defendant had been represented by appointed legal counsel in the proceeding leading to the robbery conviction underlying his probation. Defendant does not assert that the police ignored a request for counsel but only that after his arrest on the probation revocation warrant, the police questioned defendant about the murder of the taxicab driver outside the presence of the lawyer who had represented him in connection with his conviction for robbery. As this court has previously ruled, however, the right to counsel does not automatically attach when an accused is questioned in an investigatory stage, notwithstanding he is represented by counsel in some unrelated matter. *See, e.g., State v. Ture,* 353 N.W.2d 502, 511 (Minn.1984). The United States Supreme Court's recent decision in *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991), holding that an accused's invocation of his Sixth Amendment right to counsel at an initial appearance on a charged offense does not constitute an invocation of his *Miranda* right to counsel with respect to questioning on an unrelated, uncharged offense, expressly reaffirms our conclusion in *Ture* that the Sixth Amendment is "offense-specific." Here defendant was advised of his *Miranda* right to counsel and he waived that right. Under the cases he has no cause for complaining that his interrogation occurred in the absence of an attorney.

3. During jury selection, the prosecutor used peremptory challenges to exclude the only black person and all jurors under age 25 from the jury panel. Defendant argues the prosecutor's peremptory strike of the black juror was racially discriminatory and denied him a fair trial. The equal protection clause prohibits prosecutorial use of peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of race. *Batson v. Kentucky,* 476 U.S. 79, 84, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (1986); *State v. Moore,* 438 N.W.2d 101, 107 (Minn. 1989). *See also Edmonson v. Leesville Concrete Co.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (relying on *Batson* in holding that private litigants in civil case may not use peremptory challenges to exclude jurors on account of race). A defendant may establish a prima facie case of racial discrimination by showing that one or more members of a racial minority have been peremptorily excluded from the jury and that circumstances of the case raise an inference that the exclusion was based on race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722–23; *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 1370–72, 113 L.Ed.2d 411 (1991) (eliminating as precondition for a *Batson* challenge the necessity of racial identity between the objecting defendant and the excluded jurors); *Moore,* 438 N.W.2d at 107. The prosecutor's burden, after the prima facie showing has been made, is to articulate a racially neutral explanation related to the particular case to be tried. *Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1724; *Moore,* 438 N.W.2d at 107. The trial court's role is to determine if the prosecutor's response is genuine and not a pretext for discrimination and its ruling is entitled to "great deference" on review. *Moore,* 438 N.W.2d at 107.

 Here, the first prong of the defendant's prima facie showing was met by the prosecutor's peremptory strike of the black juror. As to the second prong, defendant argues the inference of racial discrimination has been established solely by the fact that the prosecutor struck the only black juror. We need not determine whether defendant made a prima facie showing of racial discrimination. The prosecutor's explanation for his peremptory strike of the black juror was that:

she is simply too young and too inexperienced in life's ups and downs to be able to make a knowledgeable determination on a case of this importance. This is a first degree murder case, and I don't think someone of her youth and inexperience is up to the decisions that need to [be] made on this case.

The juror in question, although the mother of a 3–month–old child, had graduated from high school just one year before trial and had only limited work experiences. Moreover, before striking the juror in question the prosecutor had already stricken two other jurors under the age of 25, both of whom were white. The composition of the jury ultimately selected also reflects the prosecutor's preference for older and more experienced persons. Furthermore, it is significant that the jury ultimately included a member of a minority, a Native American.

■ Defendant also challenges as age-based discrimination the prosecutor's striking of the three jurors under the age of 25. *Batson* challenges to a state's use of peremptory strikes have thus far been limited to race-based exclusions. While we do not approve of group bias, particularly as it affects jury selection, age-based classifications have not been afforded strict scrutiny as suspect classifications. *Gregory v. Ashcroft,* —— U.S. ——, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991). *See also Essling v. Markman,* 335 N.W.2d 237 (Minn.1983) (applying rational-basis test to construe a statute alleged to be discriminatory on the basis of age). Moreover, even if a *Batson* challenge were to be extended to age-based exercise of peremptories, the record sufficiently supports the trial court's determination that the prosecutor's peremptory strike of the three young jurors was not based solely on the age of the excluded jurors but rather also on the basis of a neutral, non-age-based factor, namely, that they were "too inexperienced in life's ups and downs" to decide a case of first degree murder. Without in any way endorsing the prosecutor's reasoning, we are satisfied that the trial court did not err in accepting the reason given by the prosecutor as suffi-

cient to overcome any prima facie case of impermissible age-based discrimination.

■ 4. Defendant's final claim of trial error is that the prosecutor committed misconduct in his closing argument.

At the outset of his remarks, the prosecutor made this statement:

May it please the court. Wilbur Ray Nieuwsma died last January 17, 1990. He not only died, he died brutally, shot at close range twice in his head. Once in the temple, once behind his ear. He did not merely die, he was executed. And during the course of this trial, you surely saw his executioner in this courtroom. [Defense counsel], in opening statements, told you that you were going to see him seated on that witness stand. [Y]ou did not. You saw him seated right here in the middle of this courtroom at counsel's table throughout the trial.

Defendant contends that "him" in the second paragraph refers to defendant and was, therefore, an improper reference to defendant's failure to testify. *See Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965) (state may not comment on accused's failure to testify and urge inference of guilt from that failure). Inasmuch as defense counsel had never indicated to the jury that defendant would take the stand, it seems to us much more likely that the prosecutor was attempting, albeit unartfully, to refute the defense theory that Ray Williams, the state's principal witness, not the defendant, was the "executioner" who murdered the cab driver. Any other antecedent noun than "executioner" is hopelessly remote from "him."

■ The defendant also contends that the following excerpt from the prosecutor's summation improperly alluded to defendant's failure to testify:

The evidence by which you must decide this case has all been presented to you in the form of witnesses who testified on that witness stand under oath and told you what they knew about the case or in the form of physical exhibits, which were introduced through those witnesses.

You must not speculate on what might have been said by any person who did not testify in this case. You must make your decision on the basis of the evidence presented from that witness stand. So it's not our purpose to add any additional evidence to the case.

Rather than a reference to defendant's silence, this statement appears to be an ill-considered attempt to confine the jury's deliberations to the evidence—a matter more properly left to the trial judge, who customarily discourages speculation, as did the trial judge here, by instructing the jury regarding what is evidence and is, therefore, to be considered in deciding the facts and what is not evidence and is, therefore, to be excluded from the jury's deliberations.[3]

In any event, had there been any reasonable possibility that the jury could have understood either of the foregoing excerpts as a reference to the defendant's election not to testify, defense counsel would undoubtedly have voiced an objection. Counsel did not object to either statement.

▮▮▮▮ Finally, defendant calls our attention to the following reference by the prosecutor to Williams' testimony:

You saw him, as he testified in this courtroom, his mild manner, his voice so low that you could barely hear it. Judge his demeanor, he is not a cold blooded executioner, he was in that cab, he saw what happened and he told you what happened when he came into this courtroom and testified.

Defendant contends that this was an improper expression of personal opinion by the prosecutor. The personal opinion rule is designed to prevent an attorney, whether a prosecutor or a defense attorney, from becoming an unsworn witness and otherwise personally attaching himself or herself to the cause which he or she represents. As applied to the prosecutor, the rule helps avert exploitation of the influence of the prosecutor's office. ABA Standards Relating to the Prosecutor's Function, 3–5.8(b) and Commentary (1979).[4] The standard is not designed to prevent the prosecutor from arguing that particular witnesses were or were not credible. Here, defense counsel did not object, and we are satisfied that the statements were not in the form of personal opinions and did not clearly and plainly violate the personal opinion rule.

Affirmed.

---

**3.** For example, one manual of model criminal instructions suggests the following instruction: The following things are *not* evidence, and you must not consider them as evidence in deciding the facts of this case:
 1. Statements and arguments of the attorneys.
 2. Questions and objections of the attorneys.
 3. Testimony that I instruct you to disregard.

 4. Anything you may have seen or heard when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.
Manual of Model Criminal Jury Instructions for the Ninth Circuit, § 1.03 (1989 ed.).

**4.** The ABA Standards Relating to the Defense Function contain an identical standard, 4–7.8(b).