**STATE of Minnesota, Respondent,**

**v.**

**Abdulsalam Mohamed USEE, Appellant.**

**No. A10–999.**

Court of Appeals of Minnesota.

June 20, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael K. Walz,

Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by STAUBER, Presiding Judge; KALITOWSKI, Judge; and WORKE, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant Abdulsalam Usee challenges his convictions of three counts of attempted first-degree murder, one count of first-degree assault, and two counts of second-degree assault. Appellant argues that (1) admission of a jointly tried codefendant's statement inculpating appellant violated his rights under the Confrontation Clause; (2) there was insufficient corroboration of accomplice testimony to support the verdicts; and (3) the district court abused its discretion in denying appellant's motion for a *Schwartz* hearing.

## FACTS

Appellant and Ahmed Ali were tried jointly for shooting T.G., A.F., and A.A. On August 14, 2008, the three victims were outside a Minneapolis apartment complex when T.G. saw three men with their faces covered by towels or bandanas approach them and start shooting. A bullet hit T.G.'s hand; A.F. was shot in his buttocks; and A.A. was shot several times, including a potentially fatal shot to his abdomen. T.G. and A.F. provided testimony about their injuries and stated that they could not identify the shooters.

C.K. was walking her dog near the apartment complex when she saw a black SUV pull into the parking lot. She watched three men get out of the SUV.

C.K. then heard several gunshots and saw three men, who appeared to be wearing the same clothes as the three men who got out of the SUV, run away from the building. C.K. called 911 to report the shooting and gave a description of the SUV and its license-plate number to the dispatcher. C.K. could not identify the three men. Footage from surveillance cameras at the apartment complex showed three individuals walking up the ramp where the shooting occurred shortly before security guards patrolling the complex heard shots.

The same night, a Metro Transit police officer drove past a blue SUV parked in the middle of the street near a freeway wall. The officer saw several people inside the SUV, one person standing next to it, and another person running away from the SUV toward the freeway wall. The transit officer followed the SUV until he saw a Minneapolis squad car following it and heard that Minneapolis police were stopping the SUV to investigate its connection to a shooting.

There were six men in the SUV when police officers stopped it, including appellant, Ali, A.N., and M.H. The officers found a live 9mm cartridge and five white towels in the SUV. After the men were arrested, the transit officer directed a canine unit to the location where he had seen the SUV parked earlier. Police found a 9mm semiautomatic handgun and a .40-caliber semiautomatic handgun near the freeway wall. Shell casings and fired bullets found at the apartment complex matched these guns. And DNA on the 9mm handgun matched appellant's DNA and none of the SUV's other occupants' DNA.

A.N. and M.H. testified against appellant and Ali at trial. A.N. testified that he was one of the six occupants of the SUV. Appellant asked to be dropped off at the apartment complex to visit his family, and

M.H. and Ali accompanied him. Later that night, appellant, Ali, and M.H. met the three other men at a fast-food restaurant near the apartment complex. A.N. testified that appellant, Ali, and M.H. were out of breath from running and appeared nervous.

M.H. testified that he participated in the shooting with Ali and appellant. M.H. testified that while he and the five other men were driving around in the SUV, they began talking about a conflict with a group of people who spent time at the apartment complex. The men decided to shoot people in the group in retaliation for past shootings. The men retrieved M.H.'s .40–caliber gun from a Minneapolis residence. M.H. gave the gun to Ali, and the men drove to the apartment complex. M.H., Ali, and appellant got out of the SUV and went to the apartment complex. One of the people in the other group started yelling at them, and Ali and appellant began shooting at them. After the shooting, the three men ran toward the fast-food restaurant, where they saw the SUV. Appellant and Ali wiped down the guns and threw them into a grassy area near a bridge over the freeway. M.H. identified the .40–caliber gun recovered by police as his and the 9mm gun as appellant's.

R.S. was in custody with Ali before trial. R.S. testified that Ali told him that M.H. was supposed to be one of the shooters but "chickened out" and that Ali took the gun and committed the shooting. R.S. also testified that Ali told him that appellant was the other shooter. Ali did not testify. The district court instructed the jury that it could consider Ali's statements only in the case against Ali, not in deciding whether appellant was guilty.

The jury began deliberating on February 2, 2010, and returned guilty verdicts on February 4, 2010. On February 8, 2010, appellant moved for a *Schwartz*

hearing, claiming that on February 1 or 2, the prosecutor posted several comments on her public Facebook page that could have prejudiced the jury. The district court denied the motion.

## ISSUES

1. Did the district court commit plain error in admitting Ali's statement inculpating himself and appellant in their joint trial?

2. Was there sufficient corroboration of the accomplice testimony to sustain the jury's verdicts?

3. Did the district court abuse its discretion by denying appellant's motion for a *Schwartz* hearing?

## ANALYSIS

### I.

■■■ Appellant argues that his rights under the Confrontation Clause were violated when the district court admitted, through witness R.S., Ali's statement inculpating appellant. But appellant did not object to the admission of this statement at trial. Alleged errors that were not objected to at trial are reviewed for plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). To establish plain error, appellant must show that there was an error; that the error was plain; and that the error affected appellant's substantial rights. *Id.* If these three prongs are met, we assess whether we should address the error "to ensure fairness and the integrity of the judicial proceedings." *Id.*

■■■ The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. We review de novo whether admitted testimony violates a defendant's rights under the

Confrontation Clause. *State v. Blanche,* 696 N.W.2d 351, 366 (Minn.2005).

To support his Confrontation Clause argument, appellant relies on the U.S. Supreme Court's decision in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton,* the Court held that a defendant's rights under the Confrontation Clause are violated when an out-of-court confession of a nontestifying codefendant that implicates the defendant is introduced into evidence at their joint trial. *Bruton,* 391 U.S. at 137, 88 S.Ct. at 1628. The Court concluded that limiting instructions are not an adequate substitute for a defendant's constitutional right to cross-examine the witnesses against him: "The unreliability of [accomplice statements] is intolerably compounded when the alleged accomplice ... does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed." *Id.* at 136, 88 S.Ct. at 1628. *But see Gray v. Maryland,* 523 U.S. 185, 196, 118 S.Ct. 1151, 1157, 140 L.Ed.2d 294 (1998) (excluding statement because it was inadequately redacted); *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987) (allowing admission of sufficiently redacted statement).

**Application of *Crawford v. Washington***

The U.S. Supreme Court revisited the application of the Confrontation Clause in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford,* 541 U.S. at 53–54, 124 S.Ct. at 1365; *see also State v. Bobo,* 770 N.W.2d 129, 143 (Minn.2009) (quoting *Crawford* ). And the Court subsequently clarified that although the Confrontation Clause imposes a bright-line rule against admission of testimonial out-of-court statements, it is not implicated by nontestimonial out-of-court statements. *Davis v. Washington,* 547 U.S. 813, 824, 126 S.Ct. 2266, 2274, 165 L.Ed.2d 224 (2006) (stating that the Confrontation Clause's focus on testimonial hearsay "must fairly be said to mark out not merely its 'core,' but its perimeter"); *see also Whorton v. Bockting,* 549 U.S. 406, 420, 127 S.Ct. 1173, 1183, 167 L.Ed.2d 1 (2007) (stating that "[u]nder *Crawford* ... the Confrontation Clause has no application to [nontestimonial out-of-court] statements").

Because *Bruton* and its progeny are based on the protections afforded by the Confrontation Clause, after *Crawford,* *Bruton*'s restriction on the admission of inculpatory statements by a jointly tried codefendant is limited to testimonial hearsay. *See United States v. Figueroa–Cartagena,* 612 F.3d 69, 85 (1st Cir.2010) ("It is ... necessary to view *Bruton* through the lens of *Crawford* and *Davis.* The threshold question in every case is whether the challenged statement is testimonial. If it is not, the Confrontation Clause "has no application.") (quotation omitted); *United States v. Smalls,* 605 F.3d 765, 768 n. 2 (10th Cir.2010) ("[T]he *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to nontestimonial hearsay statements."); *United States v. Johnson,* 581 F.3d 320, 325 (6th Cir.2009) (holding same), *cert. denied,* — U.S. —, 130 S.Ct. 3409, 177 L.Ed.2d 326 (2010); *United States v. Avila Vargas,* 570 F.3d 1004, 1009 (8th Cir.2009) (holding same).

■ After *Crawford* and *Davis,* admission of nontestimonial out-of-court statements is restricted only by the rules of evidence. *See Avila Vargas,* 570 F.3d at 1009 & n. 5 (concluding that hearsay rules, not Confrontation Clause, governed admission of nontestimonial statement by jointly

tried codefendant); *see also Johnson*, 581 F.3d at 325 (concluding same regarding nontestimonial statement by accomplice).

Applying *Crawford*, we must first determine whether Ali's statement that appellant was one of the shooters is testimonial or nontestimonial hearsay. The *Crawford* Court included "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" as an example of a "core class of 'testimonial' statements." *Crawford*, 541 U.S. at 51–52, 124 S.Ct. at 1364 (quotation omitted). It further explained that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51, 124 S.Ct. at 1364. In *Davis*, the Court described statements from one prisoner to another as "clearly nontestimonial." *Davis*, 547 U.S. at 825, 126 S.Ct. at 2275 (citing *Dutton v. Evans*, 400 U.S. 74, 87–89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (plurality opinion)).

■ The record indicates that Ali and R.S. became acquaintances while incarcerated together and there is no evidence that R.S. was acting on the government's behalf when Ali made the statement. Thus, Ali would not reasonably believe that his statement inculpating himself and appellant would be used in trial. Rather, it was a casual remark, not made with an eye toward trial, and therefore nontestimonial. *See State v. Morales*, 788 N.W.2d 737, 767 (Minn.2010) (concluding that inculpatory statements to friend were nontestimonial); *State v. Brist*, 799 N.W.2d 238 (Minn.App. 2011) (holding that statement made unwittingly to government informant is nontestimonial). As such, Ali's statement to R.S. does not implicate the Confrontation

Clause and *Bruton* does not bar its admission.

### Application of the Rules of Evidence

■ Having concluded that admission of Ali's statement did not violate the Confrontation Clause, we next address whether admission of the statement was error under Minnesota's rules of evidence. Initially, we note that Ali's statement inculpating himself is not hearsay but is admissible as a statement by party-opponent. Minn. R. Evid. 801(d)(2)(A) (excluding from hearsay a statement "offered against a party [that] is . . . the party's own statement").

■ But Ali's statement inculpating appellant is hearsay. And hearsay is inadmissible unless an exception applies. Minn. R. Evid. 802. Rule 804(b)(3) provides an exception for statements made against a declarant's interest. The exception is premised on the "commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994). A court must engage in a three-step analysis to determine whether a statement is admissible as a statement against interest: first, the court must determine if the declarant was unavailable to testify at trial; second, the court must determine that the statement must "at the time of its making so far tend to subject the declarant to civil or criminal liability that a reasonable person in the declarant's position would not have made the statement unless believing it to be true"; and third, the court must scrutinize the statement to avoid violating the Confrontation Clause. *State v. Tovar*, 605 N.W.2d 717, 723 (Minn.2000) (quotation omitted).

As one of the defendants on trial, Ali was unavailable to testify about his statement based on his constitutional right not to testify. *See* U.S. Const. amend. V; Minn. Const. art. I, § 7; *State v. Ford,* 539 N.W.2d 214, 227 (Minn.1995) (stating that witness who invokes right against self-incrimination is unavailable). And because the statement was nontestimonial, its admission did not violate the Confrontation Clause. Thus, the statement's admissibility depends on whether it is so inculpatory that a reasonable person in Ali's position would not have made it if he did not believe it to be true.

■■■■ "[C]ourts must consider whether each declaration or remark—rather than the narrative or conversation as a whole—is sufficiently against the declarant's interest when determining whether a statement is admissible under the Rule 804(b)(3) exception." *Morales,* 788 N.W.2d at 763. Rule 804(b)(3) does not bar admission of a statement that inculpates a third person. *Id.* at 764; *see also Williamson,* 512 U.S. at 603, 114 S.Ct. at 2436 ("Even the confessions of arrested accomplices may be admissible if they are truly self-inculpatory. . . ."). But statements incriminating a third party must be scrutinized carefully to ensure that they are truly against the declarant's penal interest and not attempts to "shift blame or curry favor." *Williamson,* 512 U.S. at 603, 114 S.Ct. at 2436; *Morales,* 788 N.W.2d at 764 (quoting *Williamson*); *see also* Fed. R.Evid. 804 1972 advisory comm. cmt. ("[A] statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as [a statement] against interest. . . . On the other hand, the same words spoken . . . to an acquaintance[ ] would have no difficulty in qualifying.").

In *State v. Morales,* the Minnesota Supreme Court concluded that statements made by a separately tried codefendant to a friend, in which he incriminated himself and the defendant, were admissible against the defendant. 788 N.W.2d at 767. The supreme court determined that the statement incriminated both the codefendant and the defendant "without shifting blame, without exaggerating [the defendant's] culpability, or lessening the criminality of [the codefendant] at the expense of a third person." *Id.* at 766. Because the statements were sufficiently against the codefendant's penal interest that a reasonable person in his position would not have made the statements unless he believed they were true, they were reliable, and the fact that the statements inculpated the defendant, not just the declarant, did not lessen their reliability. *Id.*

Here, Ali told R.S. that he was one of the shooters and that appellant was also a shooter. This statement does not shift blame from Ali or in any way lessen his culpability so as to undermine the statement's reliability. Rather, it is wholly inculpatory because it identifies Ali as a shooter and subjects him to criminal liability equally with appellant. We thus conclude that Ali's statement is admissible under *Tovar.* Ali was unavailable. As in *Morales,* Ali's statement is sufficiently reliable because it is so far against his penal interest that a reasonable person in his position would not have made it unless he believed it to be true. And the statement does not violate appellant's rights under the Confrontation Clause. We therefore conclude that the district court did not err in admitting the statement, and thus, appellant failed to satisfy the first prong of the plain-error test.

## II.

Appellant argues that the only evidence identifying him as one of the shooters was

the uncorroborated testimony of an accomplice, and therefore there is insufficient evidence to sustain his convictions. We disagree.

Minnesota law provides:

A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Minn.Stat. § 634.04 (2008). Because there is the risk that an accomplice "may testify against another in the hope of or upon a promise of immunity or clemency or to satisfy other self-serving or malicious motives," *State v. Shoop*, 441 N.W.2d 475, 479 (Minn.1989), corroborative evidence must be "weighty enough to restore confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial way." *State v. Hooper*, 620 N.W.2d 31, 39 (Minn.2000) (quotation omitted). We review the sufficiency of the corroborating evidence of an accomplice's testimony like any other challenge to the sufficiency of the evidence: we view the evidence in the light most favorable to the prosecution and with all conflicts in the evidence resolved in favor of the verdict. *State v. Nelson*, 632 N.W.2d 193, 202 (Minn.2001).

We conclude that the record contains ample evidence to corroborate accomplice M.H.'s testimony that M.H., appellant, and Ali got out of the SUV near the apartment complex and that appellant used a 9mm handgun and Ali used M.H.'s .40–caliber handgun to shoot the three victims. C.K. saw three men get out of an SUV, heard shots, and saw three men run away wearing what appeared to be the same clothes as the men she saw earlier. T.G. testified that three men began shooting at him and his friends. C.K. described the SUV, including its license-plate number to a police dispatcher. Appellant was one of six men in the SUV when it was stopped shortly after the shooting. Shell casings and fired bullets recovered from the scene of the shooting matched the guns found near where the SUV was seen parked earlier that night, and the guns recovered matched M.H.'s description. DNA on the 9mm gun matched appellant's DNA and none of the other men's DNA and had a profile that would not be expected to occur more than once among unrelated individuals in the world's population.

Corroboration is sufficient if it "reinforces the truth of the accomplice's testimony and points to the defendant's guilt in some substantial degree." *State v. Bowles*, 530 N.W.2d 521, 532 (Minn.1995). We conclude that this standard is met by the physical evidence and other testimony introduced against appellant.

### III.

Appellant argues that the district court abused its discretion by denying his request for a *Schwartz* hearing after he presented evidence that the prosecutor had posted comments on her public Facebook page discussing one of the jurors and stating that she was "keep[ing] the streets of Minneapolis safe from the Somalias [sic]" before the case was submitted to the jury. We conclude that the district court did not abuse its discretion in denying the motion for a *Schwartz* hearing and that appellant was not deprived of his right to a fair trial by an impartial jury.

A *Schwartz* hearing was originally conceived as a vehicle for the district court to address questions of jury misconduct, but its applicability has expanded to address other posttrial issues involving juries. *See, e.g., State v. Shoen*, 578 N.W.2d 708, 716 (Minn.1998) (remanding for a *Schwartz* hearing to determine whether

the improper use of leg restraint on the defendant prejudiced the jury). A defendant must establish a prima facie case of jury misconduct before a motion for a *Schwartz* hearing must be granted. *State v. Larson,* 281 N.W.2d 481, 484 (Minn. 1979). "To establish a prima facie case, a defendant must submit sufficient evidence which, standing alone and unchallenged, would warrant the conclusion of jury misconduct." *Id.* Exposure to potentially prejudicial material such as news articles regarding the case or the defendant can warrant a *Schwartz* hearing. *See, e.g., State v. Beier,* 263 N.W.2d 622, 625–27 (Minn.1978) (assessing prejudicial effect of jury's exposure to pretrial publicity). But a *Schwartz* hearing is inappropriate where the claim of misconduct is "wholly speculative and . . . not based on any evidence reasonably suggesting that misconduct had occurred." *State v. Mings,* 289 N.W.2d 497, 498 (Minn.1980).

In addition, "[a] party who learns of [juror misconduct] during trial may not keep silent and then attempt to take advantage of it in the event of an adverse verdict." *State v. Durfee,* 322 N.W.2d 778, 786 (Minn.1982); *see also Zimmerman v. Witte Transp. Co.,* 259 N.W.2d 260, 262 (Minn.1977) (stating that allegations of juror misconduct are to be brought to the attention of the district court when first suspected or the issue is waived). We review the denial of a *Schwartz* hearing for abuse of discretion. *State v. Church,* 577 N.W.2d 715, 721 (Minn.1998).

Here, the jury was instructed throughout the trial not to research the case, the issues, or anyone involved in the case on the Internet. Appellant presented evidence in the form of two affidavits—one by each of his trial attorneys—stating that the prosecutor had posted the alleged comments on her public Facebook page. But appellant did not present evidence that any juror had been exposed to the comments. Absent evidence of juror exposure, appellant did not establish a prima facie case of juror misconduct. *See State v. Martin,* 614 N.W.2d 214, 226 (Minn. 2000) (affirming denial of *Schwartz* hearing in the absence of evidence that jury was actually exposed to extraneous prejudicial material); *cf. Beier,* 263 N.W.2d at 626–27 (approving *Schwartz* hearing when defendant showed that jurors were exposed to pretrial publicity).

Moreover, appellant did not move for a *Schwartz* hearing until four days after the jury returned the guilty verdicts and was discharged. This was six days after his trial attorneys learned about the comments—on the same day the jury was charged and began deliberations. The delay prevented the district court from taking any precautionary measures. Because appellant did not establish a prima facie case of misconduct and alerted the district court to the comments only after receiving an adverse verdict, we conclude that the district court did not abuse its discretion by denying appellant's motion for a *Schwartz* hearing.

## DECISION

Restrictions under *Bruton v. United States* on the admission of statements of a jointly tried codefendant that inculpate the defendant, are limited to testimonial statements. We conclude that Ali's statement was nontestimonial and admissible under Minn. R. Evid. 804(b)(3), that there was sufficient corroboration of the accomplice testimony admitted against appellant, and that the district court did not abuse its discretion in denying appellant's motion for a *Schwartz* hearing.

**Affirmed.**