**STATE of Minnesota, Respondent,**

v.

**Robin Lee STILLDAY, Appellant.**

**No. C3–01–1495.**

Court of Appeals of Minnesota.

July 9, 2002.

Mike Hatch, Attorney General, St. Paul, and James C. Backstrom, Dakota County Attorney, Mikkel A. Long, Assistant County Attorney, Hastings, for respondent.

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Judge, KLAPHAKE, Judge, and HANSON, Judge.

## OPINION

HANSON, Judge.

On appeal from convictions of pattern of harassing conduct and fifth-degree assault, appellant argues that the district court erred by (1) allowing the state to offer inflammatory testimony about a prior act, despite appellant's willingness to stipulate to a prior conviction of terroristic threats against the victim's son in connection with that act; (2) refusing to strike opinion testimony on the battered-woman syndrome by a police officer who was not qualified as an expert on that subject; (3) admitting evidence of the victim's out-of-court statement, requesting help; and (4) using the terroristic threats conviction to determine appellant's criminal history score for sentencing when the conviction was also relevant to one of the acts used to establish a pattern of the harassing conduct. We affirm.

## FACTS

Appellant Robin Lee Stillday, a/k/a Robin Desjarlait, dated and lived with P.B.

intermittently over a twenty-year period. At times, when the two binged on alcohol, Stillday would physically assault P.B.

Stillday and P.B. drank throughout the day of February 3, 2001, when Stillday became angry and punched P.B. in the face several times. P.B. lost consciousness and was alone when she awoke. Jason Engel, P.B.'s upstairs neighbor who had heard a loud noise coming from P.B.'s apartment, knocked on P.B.'s door and heard her say "[h]elp. Call nine-one-one." Police officers responded to the report of a "physical domestic" situation at P.B.'s apartment. The officers found P.B. crying in the common area of her apartment building.

Stillday was charged with fifth-degree assault, in violation of Minn.Stat. § 609.224, subd. 1(2) (2000), and pattern of harassing conduct, in violation of Minn. Stat. § 609.749, subd. 5 (2000). The pattern of harassing conduct charge was based on the events of February 3, 2001, and three prior incidents of domestic violence occurring on February 13, 1999, September 18, 2000, and November 9, 2000. The prior incident on February 13, 1999, had resulted in Stillday's conviction of terroristic threats.

At trial, Stillday offered to stipulate to his conviction of terroristic threats in connection with the February 13, 1999, incident and sought to preclude any testimony regarding the underlying events of that conviction as being unduly prejudicial. Despite Stillday's offer, the district court allowed the state to introduce evidence of that incident, through the testimony of P.B., her son and two police officers who arrived at the scene, and through four photographs taken at the scene.

During the trial Police Officer Gary Lidster testified as a lay witness about domestic violence and his experiences dealing with battered women. Without objection

by Stillday, he stated that it was not unusual for victims of domestic violence to delay seeking an order for protection, explaining:

> It takes women different stages before they're ready to finally pack up and leave. They desperately want the relationship to continue. They just want the violence to stop.
>
> In a lot of cases that doesn't happen, and a lot of gals are willing to give it a second or third chance before they'll finally try and extricate themselves from that situation.

On cross-examination, Stillday inquired further of Officer Lidster on the difficulty of convincing victims to prosecute for domestic violence. After the noon recess, Stillday moved the court to strike Officer Lidster's testimony because the state had not provided notice that Officer Lidster would be "testifying as an expert witness on women's abuse issues, domestic assault issues, order for protection issues * * *." The district court denied the motion to strike, but gave a cautionary instruction, which stated in part as follows:

> The State of Minnesota did not call Officer Lidster as an expert in the field of what perhaps can be referred to as the battered women's syndrome. The jury can listen to the testimony and weigh it based upon the qualifications and the information that they have heard from Officer Lidster but should not take his testimony as being an expert witness in the field I've referred to.

Police Officer Dawn Johnson testified about her interview with P.B. regarding the facts of the September 18, 2000, incident.

The jury found Stillday guilty as charged. The district court sentenced Stillday to a 38–month imprisonment after considering Stillday's 1999 terroristic

threats conviction when determining his criminal history score. This appeal followed.

## ISSUES

1. Did the district court err by admitting evidence of the facts underlying Stillday's prior conviction for terroristic threats, when Stillday agreed to stipulate to his conviction?

2. Did the district court err by allowing the police officer to testify as a lay witness about battered-woman syndrome?

3. Did the district court err by admitting evidence of an out-of-court statement by the victim?

4. Did the district court erroneously calculate appellant's sentence?

## ANALYSIS

■■■■ We defer to the district court's evidentiary rulings and will not overturn them absent a clear abuse of discretion. *State v. Kelly,* 435 N.W.2d 807, 813 (Minn. 1989). Similarly, we will not reverse the district court's determination of a defendant's criminal history score absent an abuse of discretion. *Bolstad v. State,* 439 N.W.2d 50, 53 (Minn.App.1989).

## I

■■■■ Stillday argues that the district court abused its discretion by allowing evidence of the details of the February 13, 1999, incident in the face of Stillday's pretrial offer to stipulate to his conviction of terroristic threats as a result of that incident. As Stillday acknowledges, a criminal defendant's offer to stipulate does not necessarily eliminate the state's right to offer evidence on the subject, especially where the evidence has relevance beyond the stipulation. *See State v. Davidson,* 351 N.W.2d 8, 10 (Minn.1984) (stating "[t]he

reason for the general rule is that a defendant should not be able to unilaterally control the issue of the need for relevant evidence by offering to stipulate * * *."). Therefore, the district court has discretion to permit the state to present evidence of the underlying facts. *See, e.g., State v. Durfee,* 322 N.W.2d 778, 785–86 (Minn. 1982) (deciding that the district court did not err by allowing proof of the victim's injuries, including photographs regardless of defendant's offer to stipulate); *State v. Barsness,* 473 N.W.2d 325, 328 (Minn.App. 1991) (holding that the state was not required to accept a stipulation on the cause of an infant's death and could present photographs and videotape relevant to the issue), *review denied* (Minn. Aug. 29, 1991).

An exception to this general rule has been made when the potential for unfair prejudice substantially outweighs the probative value of the evidence underlying a conviction and the stipulation supplies all of the relevant information on the subject. *See State v. Berkelman,* 355 N.W.2d 394, 397 (Minn.1984) (holding that in gross misdemeanor DWI prosecution, the district court should have accepted defendant's offer to stipulate to a prior conviction); *State v. Davidson,* 351 N.W.2d 8, 11 (Minn.1984) (stating that the court should allow a defendant to stipulate to being a convicted felon during a trial for being a felon in possession of a handgun); *State v. Clark,* 375 N.W.2d 59, 62 (Minn.App.1985) (holding that defendant charged with aggravated DWI was permitted to avoid introduction of evidence regarding his license revocation by stipulating to his prior offenses).

· The United States Supreme Court decision relied upon by Stillday, *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), is consistent with this exception. The Supreme Court decided, in a trial for possession of a handgun

by a felon, that it was an abuse of discretion to admit evidence of the facts underlying the felony conviction when the defendant offered to stipulate to the conviction and the only relevance of the conviction was to show the defendant's status as a felon. *Id.* at 190–91, 117 S.Ct. at 654–56, 136 L.Ed.2d 574. But *Old Chief,* and the other cases recognizing this exception, involve the situation where only the defendant's status is at issue and the stipulation establishes that status without any evidence of the underlying facts. *Id.* at 183, n. 7, 117 S.Ct. at 651, n. 7, 136 L.Ed.2d 574.

We conclude that the exception does not apply here, and that the district court did not abuse its discretion by allowing evidence of the facts of the February 13, 1999, incident, for two independent reasons.

First, the conviction of Stillday does not provide all of the information about the prior act that is relevant to the crime of a pattern of harassing conduct. That crime is defined as follows:

a) A person who engages in a pattern of harassing conduct with respect to a single victim or one or more members of a single household *which the actor knows or has reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm* and *which does cause this reaction on the part of the victim,* is guilty of a felony and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

b) For purposes of this subdivision, a "pattern of harassing conduct" means two or more acts within a five-year period that violate the provisions of any of the following [qualifying criminal charges].

Minn.Stat. § 609.749, subd. 5 (2000) (emphasis added). Stillday's offer to stipulate to his conviction does not provide all of the information relevant to the crime because, by itself, it would not necessarily enable the jury to determine whether Stillday knew or should have known that the incident would cause P.B. "to feel terrorized or to fear bodily harm" or whether P.B. did have "this reaction."

Second, the conviction to which Stillday offered to stipulate was for terroristic threats to P.B.'s son, while the underlying incident included a separate assault of P.B. Thus, again, the conviction did not provide all of the evidence about the incident that was relevant to the crime charged.

■ In connection with the February 13, 1999, incident, the district court admitted, in addition to the testimony of P.B., the testimony of the two officers about what they encountered at the scene and what P.B. told them, as well as photographs of bloodstains within the apartment. Stillday argues that this additional evidence was duplicative, and unfairly prejudicial, because P.B. had already testified about the incident. But the district court allowed the evidence because it corroborated P.B.'s testimony and P.B.'s credibility was at issue in this case. The district court did not abuse its discretion to determine the scope of the testimony to be allowed on this incident.

## II

■ Stillday argues that the district court erred by not striking Officer Lidster's lay-witness testimony about the characteristics of battered women. The state agrees that Officer Lidster was not an expert witness, but argues that his testimony was admissible as that of a lay witness pursuant to Minn. R. Evid. 701. The testimony of a lay witness, who does not testify as an expert

is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Minn. R. Evid. 701.

Officer Lidster testified about his qualifications for dealing with domestic violence and training with domestic violence issues, about domestic violence in general, and about the characteristics of battered women and why they might delay in seeking help. Stillday did not object to this testimony when it was given and, in fact, asked related follow-up questions on cross-examination. Under the circumstances, the district court's decision to deny Stillday's motion, and to provide a curative instruction that Officer Lidster was not an expert, was not an abuse of discretion. Moreover, any error in not striking the testimony of Officer Lidster would be harmless. The testimony did not significantly affect the outcome of the case, especially in light of the other evidence admitted. *See State v. Post*, 512 N.W.2d 99, 102 n. 2. (Minn.1994).

## III

In his pro se brief, Stillday argues that the testimony of Officer Johnson and Jason Engel included inadmissible hearsay statements.

### Officer Johnson's Testimony

■ Stillday objected to Officer Johnson's testimony about what P.B. told her when she interviewed P.B. after the September 18, 2000 incident. P.B.'s statement was about Stillday's abuse of her a few days earlier. Officer Johnson testified as follows:

Q. Okay. Did she tell you she had been assaulted?

A. Yes.

Q. Who did she say assaulted her?

[STILLDAY'S ATTORNEY]: Objection. Hearsay.

THE COURT: Overruled. You may answer, officer.

THE WITNESS: Her boyfriend, Robin Desjarlait was the name that she gave.

The district court ruled that the officers' testimony was admissible as a prior consistent statement because Stillday challenged P.B.'s credibility. Prior consistent statements are not considered hearsay if the declarant testifies at the trial and is subject to cross-examination about the statement, and the consistent statement is "helpful to the trier of fact in evaluating the declarant's credibility as a witness." Minn. R. Evid. 801(d)(1). The district court did not abuse its discretion in admitting Officer Johnson's testimony of P.B.'s prior consistent statement because P.B.'s credibility was at issue.

### Engel's Testimony

■ Stillday did not object to Engel's testimony that he heard P.B. say "[h]elp. Call nine-one-one." Thus, we may consider Stillday's argument only if the admission of the evidence was plain error or a defect affecting substantial rights of Stillday. Minn. R.Crim. P. 31.02. To establish plain error, Stillday must show that the district court's ruling was erroneous, the error was plain, and the error affected his substantial rights. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998) (setting out three-prong test).

■ Stillday has not shown that the district court abused its discretion by allowing this testimony in evidence. First, this out-of-court statement was not hearsay, both because it was not an assertion of a fact and it was not offered to prove the truth of the matter asserted. *See* Minn. R. Evid. 801(c) (defining hearsay). Instead, it was only a statement that P.B.

needed help and it was offered to show why Engel contacted the police. Second, even if this statement had been hearsay, it would be admissible under either the "excited utterance" or the "then existing mental, emotional, or physical condition" exceptions to the hearsay rule. *See* Minn. R. Evid. 803(2) and (3).

## IV

■ Stillday argues that his sentence for a pattern of harassing conduct should be based on a criminal history score of three because his terroristic threats conviction, in connection with the incident of February 13, 1999, was already considered as an element of the pattern offense and it would be duplicative to also use it to calculate his sentence.

Minn. Sent. Guidelines II.B.6 provides:

When determining the criminal history score for a current offense *that is a felony solely because the offender has previous convictions* for similar or related offenses, the prior conviction(s) upon which the enhancement is based may be used in determining custody status, but cannot be used in calculating the remaining components of the offender's criminal history score.

(Emphasis added.)

It is unclear whether this guideline applies to a conviction of a pattern of harassing conduct under Minn.Stat. § 609.749, subd. 5, because guilt depends on prior "acts," not on prior "convictions." In any event, Stillday's conviction of a pattern of harassing conduct can be supported solely by the evidence of three prior acts of harassing conduct toward P.B., without any evidence concerning Stillday's terroristic threat toward P.B.'s son. Accordingly, the district court did not abuse its discretion by including the conviction in the calculation of Stillday's criminal history score.

## DECISION

The district court did not abuse its discretion in allowing the state to prove the underlying facts concerning an incident of harassing conduct toward P.B. despite Stillday's offer to stipulate to his conviction of terroristic threats to P.B.'s son, arising from the same incident. The district court did not commit prejudicial error in any of its evidentiary rulings. Finally, the district court did not abuse its discretion by using the conviction of terroristic threats to determine Stillday's criminal history score.

**Affirmed.**