**STATE of Minnesota, Respondent,**

v.

**Diondra Marquette RIVERS, Appellant.**

**No. A09–1777.**

Court of Appeals of Minnesota.

Aug. 17, 2010.

**208**

## OPINION

STONEBURNER, Judge.

Appellant challenges his convictions of six crimes related to the assault of his former girlfriend, arguing that he is entitled to a new trial because the district court permitted the prosecutor to strike a juror based on race. Appellant also challenges his sentence, arguing that the district court erred in failing to use a criminal-history score of zero for a felony sentence imposed consecutively to a gross-misdemeanor sentence and erred in imposing separate punishments for violation of an order for protection and assault that arose out of the same behavioral incident. Because the district court did not commit reversible error in denying appellant's *Batson* challenge, and because the district court did not err by using a criminal-history score of two to determine appellant's felony sentence imposed consecutively to his gross-misdemeanor sentence, we affirm in part. But because the district court erred in imposing a separate sentence for violation of an order for protection that was part of the same behavioral incident as the assault for which appellant was sentenced, we reverse and remand in part.

Lori Swanson, Attorney General, St. Paul, MN; and Brian J. Melton, Clay County Attorney, Pamela Harris, Assistant County Attorney, Moorhead, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, St. Paul, MN; and Melissa Sheridan, Assistant Public Defender, Eagan, MN, for appellant.

Considered and decided by CONNOLLY, Presiding Judge; STONEBURNER, Judge; and SCHELLHAS, Judge.

## FACTS

On October 2, 2008, appellant Diondra Marquette Rivers and N.S. appeared at a district court hearing on N.S.'s petition to make a temporary order for protection permanent. The hearing was continued so that Rivers could obtain counsel, and the district court reminded the parties that the temporary order for protection remained in place. Soon after the hearing, Rivers entered N.S.'s apartment uninvited and assaulted her while she was holding their one-year-old daughter.

As a result of this incident, Rivers was charged with two counts of burglary in the

first degree, felony domestic assault, violation of an order for protection, assault in the third degree, and gross-misdemeanor child-endangerment domestic assault. All crimes were alleged to have occurred on or about October 2, 2008.[1]

At trial, the prosecutor used a peremptory challenge to strike the only minority-race member of the jury pool. Rivers, who is African American, challenged the strike under *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986) (holding that the Equal Protection Clause of the United States Constitution prohibits the use of a peremptory strike based on a prospective juror's race). The district court denied the *Batson* challenge.

The jury found Rivers guilty of all charges. The district court sentenced Rivers to 333 days for the gross-misdemeanor offense of child-endangerment domestic assault, and, using a criminal-history score of two,[2] a consecutive 69 months for one count of first-degree burglary; a concurrent 21 months for violation of an order for protection, and a concurrent 28 months for third-degree assault. The district court vacated the other first-degree burglary conviction and the conviction of felony domestic assault as included offenses. Due to credit for time served, the sentence for gross-misdemeanor child-endangerment domestic assault was deemed fully served; therefore, Rivers was committed to the Department of Corrections for 69 months. Rivers appeals the denial of the *Batson* challenge, the duration of his burglary sentence, and the imposition of separate sentences for violation of an order for protection and assault.

## ISSUES

I. Did the district court commit reversible error by failing to strictly follow the process set out in Minn. R.Crim. P. 26.02, subd. 7(3), in determining that a *Batson* violation did not occur?

II. Do the provisions of Minn. Sent. Guidelines II.F.2 for use of a zero criminal-history score for consecutive sentencing apply to the imposition of a felony sentence for a crime against one victim sentenced consecutively to a gross-misdemeanor sentence for a crime against a separate victim?

## ANALYSIS

I. **The district court's failure to strictly follow the process set out in Minn. R.Crim. P. 26.02, subd. 7(3), did not violate *Batson* and was not reversible error.**

Whether a peremptory challenge was motivated by prohibited discriminatory intent is a question of fact for determination by the district court to which we give considerable deference. *State v. Pendleton*, 725 N.W.2d 717, 724 (Minn.2007) (stating that "[w]e give great deference to the district court's ruling on a *Batson* challenge, recognizing that the record may not reflect all of the relevant circumstances that the [district] court may consider"); *State v. Johnson*, 616 N.W.2d 720, 725 (Minn.2000) (stating that appellate courts give considerable deference to district

---

1. The child-endangerment domestic assault was alleged to have occurred "on or between October 2, 2008."

2. It is unclear from the record whether the district court used a criminal-history score of one or two. The recommendation in the presentence-investigation worksheet for a 68– month sentence for burglary is based on a criminal-history score of two. Rivers asserts that a criminal-history score of two was used, and the state does not contest that assertion. Whether the district court used a criminal-history score of one or two does not affect the analysis in this opinion.

court findings on whether a peremptory challenge was motivated by prohibited discriminatory intent because the issue typically requires an evaluation of the prosecutor's credibility). We will only reverse the district court's determination of a *Batson* challenge if it is clearly erroneous. *Pendleton*, 725 N.W.2d at 724.

*Batson* established a three-step process to determine whether a peremptory challenge is motivated by prohibited discriminatory intent, 476 U.S. at 96–98, 106 S.Ct. at 1723–24, and the Minnesota Supreme Court has adopted the *Batson* three-step process. *State v. Martin*, 773 N.W.2d 89, 101 (Minn.2009). The process has been codified in Minn. R.Crim. P. 26.02, subd. 7(3) (2010),[3] which provides, in relevant part:

> (a) First, the party making the objection must make a prima facie showing that the responding party exercised its peremptory challenge[ ] on the basis of race or gender. . . .
>
> (b) Second, if the prima facie showing has been made, the responding party must articulate a [race-neutral] explanation for exercising the peremptory challenge[ ]. . . .
>
> (c) Third, if the court determines that a [race-neutral] explanation has been articulated, the objecting party must prove that the explanation is pretextual. . . . If purposeful discrimination is proved, the objection must be sustained; otherwise the objection must be overruled.

The supreme court has emphasized the importance of the district court announcing on the record each of the three steps of this analysis, in part because a lack of clarity in the burden-shifting analysis makes appellate review difficult. *See State v. Reiners*, 664 N.W.2d 826, 832 (Minn.

2003). In this case, the district court failed to state whether or not Rivers established a prima facie case and failed to separately address the three factors for analyzing the challenge. The district court stated on the record that it understood why *either* party might be uncomfortable with the challenged juror and particularly why the state would be uncomfortable given the juror's comments about his mother's failure to protect him from violence and the possible question in this case of whether the victim failed to protect her child from Rivers. The district court concluded that it was satisfied that a number of race-neutral reasons supported the state's position, implicitly finding the prosecutor's race-neutral explanations credible and not pretextual.

■ Rivers is most critical of the district court's failure to separately address the steps of the *Batson* analysis and failure to specifically address the prosecutor's credibility. "But we have not reversed a district court's *Batson* ruling solely because of its failure to follow the prescribed procedure." *Pendleton*, 725 N.W.2d at 726. "[W]here the district court erred in applying *Batson*, we will examine the record without deferring to the district court's analysis." *Id.*

■ "A defendant may establish a prima facie case of racial discrimination by showing that one or more members of a racial minority have been peremptorily excluded from the jury and that circumstances of the case raise an inference that the exclusion was based on race." *State v. Everett*, 472 N.W.2d 864, 868 (Minn.1991). Rivers incorrectly cites *Everett* as holding that the removal of the only person of defendant's race from the jury panel is sufficient to meet the prima facie thresh-

---

**3.** Rule 26.02 was amended effective January 1, 2010. Prior to the amendment, the three-step process for analyzing a *Batson* challenge was found in subdivision 6(a)(3).

old. In *Everett,* the supreme court concluded that it "need not determine whether defendant made a prima facie showing of racial discrimination" because the prosecutor's explanation for striking the only African American on the jury panel was consistent with the prosecutor's exercise of strikes against non-minority panel members and the jury ultimately included a member of a different minority. *Id.* at 868–69. In *Everett,* the supreme court did not specifically address the third step of the *Batson* analysis, making the analysis in *Everett* remarkably similar to the district court's analysis in this case, but *Everett* predates the incorporation of the *Batson* three-step analysis into Rule 26.02 subd. 7(3).

Here, the district court implicitly determined that Rivers had established a prima facie case by asking the prosecutor whether he could articulate a race-neutral reason for the strike after Rivers asserted the challenge based on the prosecutor's strike of the only African American on the jury panel. Based on the prosecutor's response, the district court found that a number of race-neutral reasons supported the strike and, by denying the challenge, implicitly found that Rivers did not prove purposeful discrimination.

The prosecutor explained that he exercised the challenge because the juror was remarkably similar to Rivers based on "age, frequent address changes, and the

way he raises money,"[4] as well as the juror's reluctance to serve due to the violence he has experienced in his life, including abuse by his father from which his mother failed to protect him. The prosecutor stated that he would have struck any juror, of any race, on these bases.

On appeal, Rivers argues that the prosecutor's failure to use a peremptory challenge to strike two non-minority jurors who revealed that they had been victims of domestic abuse creates an inference that the challenged strike was based on race and that the prosecutor's explanation was pretextual. But the record reflects that the prosecutor did use a peremptory strike against one of these jurors before striking the minority-race juror.[5] And, having also struck a panel member who had previously been charged with domestic assault, the prosecutor, who had only three strikes, was not able to strike the additional juror who expressed that she had experienced domestic abuse.

■■■ Rivers argues that the district court's failure to specifically address the third step in the *Batson* analysis constitutes a *Batson* violation and is reversible error. Although Rivers is correct that *Batson* violations are not subject to harmless-error analysis, the district court's failure to exactly follow the three-step process for analyzing a *Batson* challenge is not a *Batson* violation. *See Pendleton,* 725

4. Rivers argues in his appellate brief that being "a lot like the defendant" was a reference to race, but the prosecutor specifically outlined the characteristics he was concerned about and it is an unfair characterization for Rivers to ignore those characteristics to argue that the challenge was based solely on race.

5. Rivers argues that the third step of the *Batson* analysis requires the district court to consider whether the prosecutor has engaged in any disparate questioning of minorities and non-minorities and has exercised stated race-neutral reasons in a uniform way, citing *Miller–El v. Cockrell,* 537 U.S. 322, 339, 343–44, 123 S.Ct. 1029, 1040–41, 1043, 154 L.Ed.2d 931 (2003). We note that the circumstances of *Miller–El* make it of dubious relevance to this case, but, more importantly, there is no evidence in this record of disparity in questioning or failure to exercise stated race-neutral reasons uniformly: the prosecutor struck prospective jurors whose life experiences, in the prosecutor's opinion, made them undesirable jurors in this case.

N.W.2d at 726. A *Batson* violation occurs when the prosecutor uses a preemptory strike based on a prospective juror's race. *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. A district court's failure to articulate the *Batson*-challenge analysis according to Minn. R.Crim. P. 26.02, subd. 7(3) may be harmless error. Based on the record, we conclude that the district court did not err by denying the *Batson* challenge in this case and that failure to strictly follow the rules was harmless error.

## II. The provisions of the Minnesota Sentencing Guidelines for determining the duration of a permissive consecutive felony sentence do not apply to a felony sentence for a crime against one victim imposed consecutively to a gross-misdemeanor sentence for a crime against a separate victim.

█ The sentencing guidelines provide that "for each offense [permissively] sentenced consecutive[ly] to another offense(s), ... a zero criminal-history score, or the mandatory minimum for the offense, whichever is greater, shall be used in determining the presumptive duration." Minn. Sent. Guidelines II.F.2. Rivers asserts that imposition of consecutive sentences for burglary and child-endangerment domestic assault was permissive, and that the district court erred by failing to use a criminal-history score of zero to determine the duration of the felony sentence.[6]

█ A reviewing court will not reverse a district court's determination of a defendant's criminal-history score absent an abuse of discretion. *State v. Stillday,* 646 N.W.2d 557, 561 (Minn.App.2002), *review denied* (Minn. Aug. 20, 2002). But interpretation of the sentencing guidelines is a question of law reviewed de novo. *State v. Williams,* 771 N.W.2d 514, 520 (Minn. 2009).

Minn. Sent. Guidelines II.F.2 limits permissive consecutive sentences to the seven circumstances set out in that section of the guidelines.[7] Rivers argues that consecutive sentencing for the burglary and child-endangerment domestic assault convictions in this case could only have been permissive under Minn. Sent. Guidelines II. F.2(b), which provides that "[m]ultiple current felony convictions for crimes on the list of offenses eligible for permissive consecutive sentences found in Section VI may be sentenced consecutively to each other[.]"[8] But that section plainly applies to the imposition of sentences for multiple current *felony* convictions, and the sentencing guidelines do not apply to gross misdemeanor offenses. *See State v. Kier,* 678 N.W.2d 672, 677 (Minn.App.2004) (stating that the sentencing guidelines do not apply to gross-misdemeanor offenses).

█ Additionally, the guidelines do not specifically authorize permissive consecutive sentences for crimes against separate victims, which is the basis for the imposition of consecutive sentences in this case: the child-endangerment domestic assault offense was committed against the child; the felony offenses were committed against N.S. When crimes are committed

---

6. The additional felony sentences were imposed concurrently to the burglary sentence and Rivers does not challenge the criminal-history scores used for those sentences.

7. "Permissive" means that the sentence may be given without departing from the sentencing guidelines. Minn. Sent. Guidelines II.F.2.

8. First-degree burglary and third-degree assault are on the list in Section VI of the sentencing guidelines, and therefore could have been, but were not in this case, sentenced consecutively.

against multiple victims, even if the crimes are committed in a single behavioral incident, it has long been recognized that multiple and consecutive sentences are allowed. *See State v. Cruz–Ramirez,* 771 N.W.2d 497, 512 (Minn.2009) (stating that when multiple victims are involved, multiple and consecutive sentences are allowed). The authority for separate consecutive sentences for multiple victims is, therefore, based on caselaw, not the sentencing guidelines. Because the guidelines do not apply to gross-misdemeanor sentences and because the authority for consecutive sentencing in this case does not derive from the sentencing guidelines, we conclude that the provisions of Minn. Sent. Guidelines II.F.2 do not apply to the sentences imposed in this case. Therefore, the district court did not abuse its discretion by failing to reduce Rivers's criminal-history score to zero to determine the duration of his burglary sentence imposed consecutively to the sentence for child-endangerment domestic assault.

### III. The district court erred in imposing separate sentences for convictions of violation of an order for protection and assault that arose out of the same behavioral incident.

■■■ Minn.Stat. § 609.035, subd. 1 (2008), with some exceptions,[9] prohibits multiple sentences for two or more offenses committed as part of the same behavioral incident. Rivers argues that it was, therefore, error for him to be sentenced for both third-degree assault and violation of the order for protection because the two offenses arose out of the same behavioral incident. We agree.

■■■ Whether separate offenses arose out of a single behavioral incident depends on the facts and circumstances of the particular case. *State v. Hawkins,* 511 N.W.2d 9, 13 (Minn.1994). A district court's sentencing decision ordinarily entails factual determinations that will not be reversed on appeal unless they are clearly erroneous. *See Effinger v. State,* 380 N.W.2d 483, 488–89 (Minn.1986). But on established facts, whether multiple offenses are part of a single behavioral incident presents a question of law, which we review de novo. *State v. Marchbanks,* 632 N.W.2d 725, 731 (Minn.App.2001).

In *State v. Johnson,* the supreme court formulated a test to be used in determining whether two intentional offenses arose out of a single behavioral incident and emphasized that, in addition to the factors of time and place, "the essential ingredient of any test is whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective." 273 Minn. 394, 404, 141 N.W.2d 517, 525 (1966). "For example, when arson is the means by which the defendant commits a murder, the defendant may not be sentenced both for the murder and for the arson, because the time and place of the offenses coincide and because the defendant is motivated by an effort to obtain a single criminal objective." *State v. Bookwalter,* 541 N.W.2d 290, 294 (Minn.1995). Here, violation of the order for protection was the means by which Rivers was able to assault N.S. As Rivers asserts, "both offenses occurred at the same time and in the same place as part of a continuous and uninterrupted course of conduct involving one victim."

The state argues that because the jury heard about many instances of contact be-

---

9. Minn.Stat. § 609.585 (2008) provides, in relevant part, that conviction of the crime of burglary is not a bar to conviction or punish-

ment for any other crime committed on entering or while in the building entered.

tween Rivers and N.S. throughout the time that the protective order was in effect, including telephone contact after the assault occurred, "[i]t is not clear from the record which contact the jury decided was the violation." We find this argument entirely without merit, and note that it invites argument that the jury's verdict on this charge might not have been unanimous.

The complaint alleged that the violation of the order for protection occurred "on or about October 2, 2008." This is the same date stated in the complaint for all of the other charges. In closing argument, the prosecutor only briefly mentioned this charge:

> Finally, the fifth count, violation of an order for protection. [Rivers] admitted he knew that there was an order. You have a copy of the order. You'll see the terms of the order. And he—when I asked him, "Did you know you weren't supposed to go over to her house on October 2nd?" he said, "Yes.["]
>
> . . . .
>
> He knew he was violating that order by going over there.

In rebuttal argument, the prosecutor invited the jury to look at the order for protection and consider that even if they believed that N.S. invited Rivers over on the day he assaulted her, the order for protection prohibited him from entering her residence. In the final jury instructions, the jury was told that to find Rivers guilty of violating the order for protection, it must find that specific acts "took place on or about October 2, 2008, in Clay County." The verdict form does not contain any dates or locations.

On this record, we find disingenuous the state's argument on appeal that the jury may have convicted Rivers for a violation of the order for protection not connected with the burglary and assault, maybe even

for phone calls made while he was driving to Tennessee after the assault. Because we conclude that the district court erred in imposing separate sentences for convictions of violation of the order for protection and assault, we reverse and remand for a correction of Rivers's sentence consistent with this opinion.

### DECISION

The district court did not clearly err in determining that Rivers failed to establish a *Batson* violation, and the district court's failure to strictly follow the process set forth in Minn. R.Crim. P. 26.02, subd. 7(3), in reaching that determination is not reversible error. The district court did not abuse its discretion in determining the duration of the burglary sentence based on Rivers's criminal-history score of two because the provisions of Minn. Sent. Guidelines II.F.2 do not apply to gross-misdemeanor sentences or to consecutive sentences imposed for offenses against multiple victims. But the district court erred in imposing separate sentences for convictions of violation of an order for protection and assault that arose out of the same behavioral incident.

**Affirmed in part, reversed in part, and remanded.**