*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0433**

State of Minnesota,
Respondent,

vs.

Arteco Marvell Rhodes,
Appellant.

**Filed August 3, 2015
Affirmed
Cleary, Chief Judge**

Ramsey County District Court
File No. 62-CR-13-3859

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, Minnesota (for appellant)

        Considered and decided by Rodenberg, Presiding Judge; Cleary, Chief Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

The state charged appellant Arteco Marvell Rhodes with four crimes, including sex trafficking under Minn. Stat. § 609.322 (2012), third-degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(b) (2012), possession of child pornography under Minn. Stat. § 617.247, subd. 4(a) (2012), and second-degree assault with a dangerous weapon under Minn. Stat. § 609.222, subd. 1 (2012). The jury found appellant not guilty of criminal sexual conduct and second-degree assault with a dangerous weapon, but guilty of sex trafficking a minor and possession of child pornography. The district court sentenced appellant to 300 months imprisonment for sex trafficking and 15 months for possession of child pornography, to be served consecutively. Appellant appealed and obtained an order staying the appeal to file a petition for postconviction relief challenging his criminal-history score and the length of his sentence. The district court denied appellant's petition for postconviction relief and this court reinstated his appeal. We affirm.

## FACTS

In early April 2013, appellant met the victim, T.J., in Chicago. When they met, T.J. was 15 years old and appellant was 38 years old. T.J.'s description of events was corroborated by other testimony and evidence at trial.

### *T.J.'s testimony and corroborating testimony from other witnesses*

T.J. met appellant through his brother in Chicago, Illinois. Appellant asked T.J. whether she was "lookin' for a family" and whether she wanted to go to Minnesota.

At first, T.J. said that she did not want to go to Minnesota, but a female friend of appellant convinced her to go. The next day, April 3, 2013, T.J., appellant, and his friend left for Minnesota in appellant's van. Appellant and his friend told T.J. that she was going to make money for appellant by prostituting through a website called Backpage. In return for working as a prostitute, appellant would provide T.J. with clothes and food.

When the group arrived, they got a motel room in Roseville, Minnesota. T.J. went to take a shower, appellant followed her, and they allegedly had sexual intercourse before going to bed. T.J. and appellant allegedly had sexual intercourse the following morning as well. Appellant took several pictures of T.J. in the nude with his phone, including one picture with appellant standing naked behind T.J. Appellant's friend became angry that appellant had sexual intercourse with T.J. and left the motel.

Throughout the next week, T.J. and appellant sometimes stayed in a motel and other times in the van. At some point during the week, T.J. met a young woman named Alexandria Pflepsen-Warnecke, who described herself as appellant's step-daughter. Appellant asked Ms. Pflepsen-Warnecke to help him put a listing on Backpage with a credit card. The pair used Ms. Pflepsen-Warnecke's iPad for the posting, but Ms. Pflepsen-Warnecke testified that she was not the person who actually put the advertisement on Backpage. Ms. Pflepsen-Warnecke testified that appellant put pictures of someone that looked like T.J. on Backpage and created a profile for her. A male solicitor called T.J. and appellant drove her to meet him. T.J. had sex with the

3

solicitor for $80.00 and gave the money to appellant. Appellant posted a second advertisement but no one responded to it.

On April 9, 2013, appellant got into an argument with Ms. Pflepsen-Warnecke about whether T.J. should go home. Appellant eventually left Ms. Pflepsen-Warnecke's apartment with T.J. Appellant was angry with T.J. because he believed that she had talked about him to his brother. Appellant parked the van and began assaulting T.J. He made T.J. lie down on the back seat of the van and began punching her in the face. Appellant put on a pair of black gloves and began hitting T.J. with a baseball bat. Appellant also choked T.J. with his hands until she urinated and lost consciousness. T.J. regained consciousness to appellant urinating, spitting, and blowing "snot" on her. Appellant then began pulling T.J.'s hair extensions out and burning her hair. Appellant told T.J. that he was going to kill her so she did not ruin his life by telling the police. Appellant assaulted T.J. on-and-off for approximately three hours.

Appellant then brought T.J. to his cousin's house so that she could stay there overnight. T.J. fled the house in the morning and was able to flag down a man who took her to a hospital. The nurses treating T.J. called the police and notified them that a minor had been the victim of an assault. A doctor examined T.J. and diagnosed her with a contusion and massive swelling around the left eye, a contusion on the right forearm, bruising around the right thigh, and bruising of the chest wall. The doctor also noticed that the back layer of scalp had been removed and testified that the injuries were consistent with blunt force trauma.

*Appellant's Testimony*

Appellant testified that he met T.J. in Chicago, Illinois. According to appellant, a female friend asked him if T.J. could go with them to Minneapolis. Appellant claimed that he had no knowledge that his friend and T.J. were going to Minnesota to prostitute. When they arrived in Minnesota, appellant said they rented a room, smoked "a lot of weed, and went to sleep." Appellant denied having sexual intercourse with T.J. in the hotel room and testified that his friend actually took the nude photographs of T.J.

Appellant testified that he had never heard of Backpage, but admitted dropping T.J. off at a hotel at Ms. Pflepsen-Warnecke's request. According to appellant, he had an argument with Ms. Pflepsen-Warnecke because she was jealous of T.J. Appellant testified that he left Ms. Pflepsen-Warnecke's apartment with T.J. and picked up several female friends. Appellant then met another man at a gas station and went to his car for around 30-40 minutes to smoke marijuana. He left T.J. and the other girls in the van. When appellant returned to his van, he witnessed his female friends assaulting T.J. because one of them was jealous of T.J.'s relationship with appellant.

Appellant then took T.J. to his cousin's house to stay the night. Appellant never picked up T.J., and the next time he heard about her was from Ms. Pflepsen-Warnecke, who told him to delete his Facebook page and go back to Chicago because the police were looking for him. Appellant was subsequently arrested on April 19, 2013, found guilty of sex trafficking and possession of child pornography after a jury trial, and this appeal followed.

## D E C I S I O N

### I.  The district court did not commit plain error by allowing the state to introduce evidence of alleged threats that appellant made to witnesses

The state elicited testimony that appellant threatened witnesses, that appellant told Ms. Pflepsen-Warnecke to tell T.J. not to testify, and that appellant said that anyone who testified against him would be killed upon leaving the courtroom. Appellant did not object to any of these statements at trial, but now argues that their admission was plain error. The state argues that the statements were admissible to explain a witness's contradictory statements.

Appellate courts use the plain-error doctrine when examining unobjected-to error. *State v. Ramey*, 721 N.W.2d 294, 297-98 (Minn. 2006). Plain error exists if there is (1) an error, (2) that is plain, (3) and that affects the defendant's substantial rights. *State v. Washington*, 725 N.W.2d 125, 133 (Minn. App. 2006), *review denied* (March 20, 2007). This court will find error in a trial court's evidentiary ruling only if appellant can show that the district court abused its discretion. *State v. Atkinson*, 774 N.W.2d 584, 594 (Minn. 2009). And an error is plain if it "contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302.

"Evidence of witnesses' fears of testifying and of purported threats against witnesses both tend to be relevant to general witness credibility or to explain a witness's reluctance to testify or inconsistencies in a witness's story." *State v. McArthur*, 730 N.W.2d 44, 52 (Minn. 2007). A witness's potential bias is relevant "because the jury, as finder of fact and weigher of credibility, has historically been

6

entitled to assess all evidence which might bear on the accuracy and truth of a witness'
testimony." *State v. Clifton*, 701 N.W.2d at 793, 797 (Minn. 2005) (quotation
omitted). But the district court should be sure that the evidence of fear or threats is not
impermissibly used to attack the defendant's character. *McArthur*, 730 N.W.2d at 52.

On cross-examination, both T.J. and Ms. Pflepsen-Warnecke admitted to lying
to the police. The fact that two witnesses, both of whom were essential to the state's
case, initially lied to the police could have impacted their credibility in the eyes of the
jury. The evidence of appellant's alleged threats to Ms. Pflepsen-Warnecke and T.J.
was therefore relevant in bolstering the witnesses' credibility. *See State v. Vance*, 714
N.W.2d 428, 441 (Minn. 2006) (holding that threat evidence was admissible to bolster
credibility of witnesses who were impeached based on cooperation with state).
Because the threat evidence was admissible to rehabilitate two key witnesses'
credibility, the district court did not err by failing to sua sponte strike the threat
testimony, let alone commit plain error that contravened settled law.

## II. There was sufficient evidence to prove that T.J. suffered bodily injury during the commission of the sex-trafficking offense

Appellant argues that there was insufficient evidence to support the jury's
verdict that T.J. suffered bodily harm during the commission of the sex-trafficking
offense. Appellant makes two arguments regarding the aggravating factor of bodily
harm: (1) the evidence was insufficient to establish that T.J. suffered bodily harm, and
(2) the alleged physical assault occurred after the sex-trafficking offense had ended.

In reviewing a claim challenging the sufficiency of the evidence, "our role . . . is limited to ascertaining whether the jury could reasonably find the defendant guilty given the facts in evidence and the legitimate inferences which could be drawn from those facts." *State v. Miles*, 585 N.W.2d 368, 372 (Minn. 1998). "We view the evidence in the light most favorable to the verdict and assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary." *Id.*

The state charged appellant with violating Minn. Stat. § 609.322, subd. 1(a)(4), which requires one who is not acting as a prostitute or patron to intentionally engage "in the sex trafficking of an individual under the age of 18 years." Sex trafficking is broadly defined as "receiving, recruiting, enticing, harboring, providing, or obtaining by any means an individual to aid in the prostitution of the individual." Minn. Stat. § 609.321, subd. 7a. (2014). An aggravating factor to sex trafficking is whether the offense involves a sex-trafficking victim who suffered bodily harm during the commission of the offense. Minn. Stat. § 609.322, subd. 1(b)(2). "Bodily harm" includes physical pain or injury. Minn. Stat. § 609.02, subd. 7 (2012). The state also charged appellant with second-degree assault under Minn. Stat. § 609.222, subd. 1, which requires a showing of assault with a dangerous weapon but does not require a showing of bodily harm.

Appellant first argues that because the jury found him not guilty of second-degree assault with a dangerous weapon, he could not be sentenced for inflicting "bodily harm" under section 609.322. However, the second-degree assault charge did not require a showing of bodily harm. *See* Minn. Stat. § 609.222, subd. 1 ("Whoever

8

assaults another with a dangerous weapon may be sentenced to imprisonment . . . .").
The fact that the jury found appellant not guilty of assault with a dangerous weapon is
therefore irrelevant to the question of whether T.J. suffered bodily harm.

The evidence presented at trial established that appellant attacked T.J. and she
suffered bodily harm, including contusions to her face, thigh, chest, and right arm. An
emergency-room doctor testified about the extent of T.J.'s injuries, and the jury found
that T.J. suffered bodily harm during the commission of the offense in its verdict form.
The jury had sufficient evidence to find that T.J. suffered bodily harm.

Appellant next argues that the bodily harm occurred after the sex-trafficking
offense had ended. The jury found appellant guilty of sex trafficking for the actions
occurring "on or about April 1st to April 10, 2013." Testimony established that
appellant brought T.J. to Minnesota for the purpose of prostituting; appellant helped
T.J. set up an advertisement on Backpage; appellant took T.J. to a hotel to prostitute;
and appellant arranged for T.J.'s living accommodations while she was in Minnesota.
The jury had sufficient evidence to find that the sex trafficking occurred from April 1-
10. The assault that caused bodily harm occurred on April 9, 2013, during the
commission of the sex-trafficking offense. The bodily harm therefore occurred
"during the commission of the offense." Minn. Stat. § 609.322, subd. 1(b)(2). The
jury had sufficient evidence to find that T.J. suffered bodily harm and that she suffered
the bodily harm during the commission of the sex-trafficking offense.

9

**III. The district court did not abuse its discretion by including one-half of a point for a non-Minnesota felony offense**

During the sentencing phase, the district court included one-half of a felony point in appellant's criminal-history score for an Illinois felony offense of possession of less than 15 grams of cocaine, for which he received a sentence of 24 months' probation. After being convicted of sex trafficking, appellant filed for postconviction relief challenging his criminal-history score. The district court concluded that possession of cocaine would be a felony in Minnesota. Appellant argues that the probation sentence would be a gross misdemeanor sentence in Minnesota and that he therefore should not have received one-half of a felony point in his criminal-history score.

The district court's determination of the criminal-history score will not be reversed absent an abuse of discretion. *State v. Stillday*, 646 N.W.2d 557, 561 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002). The district court makes non-Minnesota offense designations based on "whether the offense is defined as a felony, gross misdemeanor, or targeted misdemeanor in Minnesota; and the sentence imposed." Minn. Sent. Guidelines 2.B.5.b (2012). Minnesota law governs the designation of a non-Minnesota offense as a felony or gross misdemeanor. *Id*.

"[A]ny court may stay imposition or execution of sentence and . . . may place the defendant on probation . . . ." Minn. Stat. § 609.135, subd. 1(a)(2) (2014). When ordering a stay of imposition, the defendant is found guilty, but the court does not pronounce a prison sentence duration. Minn. Sent. Guidelines 3.A.1 (2012); *State v.*

10

*C.P.H.*, 707 N.W.2d 699, 702 (Minn. App. 2006). If a defendant fails to meet the conditions of the stay, the district court can vacate the stay and impose a sentence. *C.P.H.*, 707 N.W.2d at 702. A stay of imposition of a felony offense results in felony criminal-history points regardless of the period of probation that the defendant receives. *State v. Campbell*, 814 N.W.2d 1, 7 (Minn. 2012).

As to the sentencing prong of the non-Minnesota offense, the Illinois court sentenced appellant to 24 months' probation, but did not use the term "stay of imposition" because Illinois apparently does not have an equivalent term. In the Illinois sentencing order, appellant agreed that any violation of the terms of his probation "may result in a re-sentencing imposing the maximum penalty as provided for the offense." Appellant's sentence was functionally equivalent to a stay of imposition in Minnesota where a district court can similarly revoke a stay and impose a sentence if the defendant violates certain conditions. *C.P.H.*, 707 N.W.2d at 702.

As to the definition prong of the non-Minnesota offense, the district court did not abuse its discretion by finding that appellant's Illinois offense would be defined as a felony in Minnesota. A felony is defined as a "crime for which a sentence of imprisonment for more than one year may be imposed." Minn. Stat. § 609.02, subd. 2 (2014). The possession of any amount of cocaine in Minnesota is a crime punishable by up to five years in prison. Minn. Stat §§ 152.025, subd. 2, .02, subd. 3(b) (2012). The non-Minnesota offense (possession of cocaine) to which appellant pleaded guilty is therefore defined as a felony in Minnesota.

11

Because appellant's Illinois offense would be defined as a felony in Minnesota, and he received the equivalent of a stay of imposition of a felony offense, we affirm the sentence.

**IV.    The district court did not clearly err by finding that the sex-trafficking and possession of child pornography offenses did not occur as part of a single-behavioral incident**

The jury found appellant guilty of sex trafficking and possession of child pornography. The district court sentenced appellant to consecutive sentences totaling 315 months' imprisonment. Appellant makes two arguments regarding his sentence: (1) that the two offenses were committed as part of a single behavioral incident, and (2) that the district court abused its discretion by imposing consecutive sentences.

First, appellant argues that both offenses were committed as part of a single behavioral incident. Minn. Stat. § 609.035 (2014) generally "prohibits multiple sentences, even concurrent sentences, for two or more offenses that were committed as part of a single behavioral incident." *State v. Norregaard*, 384 N.W.2d 449, 449 (Minn. 1986). Whether multiple offenses are part of a single behavioral incident depends on the time and place of the offenses, and whether the offenses were motivated by a single criminal objective. *State v. Schmidt*, 612 N.W.2d 871, 876 (Minn. 2000). "[T]he district court's determination of whether multiple offenses constitute a single behavioral incident is a factual determination that we will not disturb unless clearly erroneous." *State v. O'Meara*, 755 N.W.2d 29, 37 (Minn. App. 2008).

The complaint charged appellant with, and the jury found appellant guilty of, possessing child pornography on April 19, 2013. The state charged appellant with possession of child pornography on April 19 because that was when he was arrested with his cell phone. The jury found appellant guilty of sex trafficking from April 1-10, 2013. The district court's finding that the two offenses occurred on different dates and at different places was not clearly erroneous.

The district court also found that the two offenses were not motivated by a single criminal objective because the nude photographs of T.J. were not used in the Backpage advertisement. Appellant challenges this finding by citing an investigator's trial testimony in which the investigator said that the nude photographs of T.J. could have been used to coerce her into prostitution. Appellant errs by relying on only one passage of one witness's testimony when the district court examined all of the facts and circumstances. *See State v. Soto*, 562 N.W.2d 299, 304 (Minn. 1997) (stating that whether multiple offenses are part of a single behavioral act involves an examination of all the facts). The record clearly demonstrates that appellant kept the nude photographs of T.J. after the sex-trafficking offense had ended. At that point, appellant had a different criminal objective because sex trafficking was no longer taking place. Because the two offenses occurred at a different time and place, and with a different criminal objective, the district court did not err in finding that the two offenses were part of separate behavioral incidents.

Finally, appellant argues that the district court abused its discretion by imposing consecutive sentences for both offenses. This court will not disturb a district court's

13

imposition of consecutive sentences absent a clear abuse of discretion. *State v. McLaughlin*, 725 N.W.2d 703, 715 (Minn. 2007). We will not find an abuse of discretion unless the sentence is disproportionate to the offense or unfairly exaggerates the criminality of the defendant's conduct. *Id.* Consecutive sentencing for sex trafficking and possession of child pornography is permitted. *See* Minn. Sent. Guidelines 6.A (2012) (listing possession of child pornography and sex trafficking as permissible offenses for consecutive sentences).

Appellant was sentenced to 300 months for sex trafficking and 15 months for possession of child pornography. Appellant's culpability and the criminality of his conduct were horrific: he drove T.J., a 15-year-old girl, to Minnesota for the purpose of making her work as a prostitute; he took photographs of T.J. in the nude; he manipulated T.J. into having sex with a stranger for money; and after T.J. told appellant that she wanted to return to Chicago, he physically assaulted her while threatening to kill her so that she could not go to the police. Appellant did not present any mitigating factors that would have reduced his culpability for his criminal acts or take responsibility for his actions at the sentencing hearing. *See McLaughlin*, 725 N.W.2d at 716 (considering mitigating factors in imposing consecutive sentences). Given the brutal nature of appellant's actions, the district court did not abuse its discretion in imposing a consecutive sentence that fell within the guidelines.

**Affirmed**.