*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0671**

State of Minnesota,
Respondent,

vs.

Maurice Deon Jackson,
Appellant.

**Filed April 11, 2016
Affirmed in part, reversed in part, and remanded
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-14-79

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

　　　　Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

　　　　Appealing his convictions of first-degree aggravated robbery and domestic assault by strangulation, appellant argues that the evidence was insufficient to support his robbery

conviction and that the district court erred by sentencing him on both convictions. We affirm in part, reverse in part, and remand.

## FACTS

On December 4, 2013, K.G. and appellant Maurice Deon Jackson got into an argument regarding a bottle of vodka in K.G.'s apartment bedroom. At trial, K.G. testified that after she refused to show him the bottle and asked him to leave her bedroom, appellant strangled her until she was unconscious. When she regained consciousness, K.G. "went to grab [her two cell] phones" to "call 911" but appellant "got up on the bed over [her] and grabbed [the] phones." Appellant strangled K.G. until she was unconscious a second time. When she regained consciousness, appellant told K.G. that he was going to take her phones. Appellant then strangled K.G. until she was unconscious a third time. When she regained consciousness, appellant was no longer in her room. Appellant searched her bedroom for her phones, but could not locate them.

K.G. climbed out of her bedroom window and ran to a neighbor's home where the neighbor called 911. A Brooklyn Park police officer responded to the call. The squad car recording shows that K.G. told the officer multiple times that appellant took her phones, and that she provided the officer with the phone numbers and a description of the phones. The officer and K.G. went back to the apartment. K.G. went through her entire room looking for the phones and, again, could not locate them. At trial, the officer testified that he also did not see the phones in K.G.'s bedroom. K.G. then used her roommate's computer to contact a friend for a place to stay.

Appellant was charged with first-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 1 (2012), and domestic assault by strangulation in violation of Minn. Stat. § 609.2247, subd. 2 (2012). Following a two-day court trial, appellant was convicted of both offenses. The district court sentenced appellant to 95 months in prison for the robbery conviction and to 39 months concurrently for the assault conviction.

This appeal follows.

## DECISION

**I.    There is sufficient evidence in the record to support appellant's conviction of first-degree aggravated robbery.**

When evaluating the sufficiency of the evidence, we apply the same standard of review to a district court's findings as we apply to a jury's verdict. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). We "determine whether the facts in the record and the legitimate inferences drawn from them would permit the [fact-finder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Salyers*, 858 N.W.2d 156, 160 (Minn. 2015) (quotations omitted). We "view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *Palmer*, 803 N.W.2d at 733 (quotation omitted).

To establish appellant's guilt of first-degree aggravated robbery, the state was required to prove that he (1) wrongfully took personal property from K.G., (2) used force or the threat of imminent force to overcome K.G.'s resistance in the taking or carrying away of the property, and (3) inflicted bodily harm upon K.G. Minn. Stat. §§ 609.24,

3

609.245, subd. 1 (2012); *State v. Brown*, 597 N.W.2d 299, 303 (Minn. App. 1999), *review denied* (Minn. Sept. 14, 1999). Appellant challenges only the first element, arguing that there is insufficient evidence to support a finding that he took personal property from K.G.

Viewing the evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence that appellant took K.G.'s two cell phones. K.G. testified that appellant "grabbed" her phones, he told her that he was going to take her phones, and, after she regained consciousness the third time, both appellant and her phones were gone. In addition, both K.G. and the officer testified that when they returned to her bedroom, they did not locate the phones. Given these facts, there is ample evidence to sustain the district court's conclusion that appellant took K.G.'s phones.

Appellant argues that K.G.'s "[i]nconsistent and [d]ubious" testimony creates reasonable doubt. He acknowledges that the uncorroborated testimony of a single credible witness can support a conviction, and that weighing the credibility of a witness is the province of the fact-finder, who may accept and reject part of a witness's testimony. *See State v. Forman*, 680 N.W.2d 536, 539 (Minn. 2004); *State v. Landa*, 642 N.W.2d 720, 725 (Minn. 2002). But he argues that "in certain cases, . . . convictions have been reversed where the evidence supporting conviction was of dubious credibility." We are not persuaded. K.G. consistently testified at trial about the phones. Further, her testimony was corroborated by the squad-car recording showing that K.G. told the officer multiple times that appellant took her phones, and that she provided the officer with the phone numbers and a description of the phones. Her testimony was also corroborated by the evidence that K.G.'s neighbor called 911 and that she used her roommate's computer to contact a friend

4

for a place to stay.  The only alleged inconsistency in K.G.'s statements regarding the two phones was about their description and this was given to the officer shortly after the assault took place.

In his pro se supplemental brief, appellant argues that "[t]he record contains insufficient evidence to support the conviction of aggravated robbery in the first degree" and that "[t]he court err[ed] in finding that appellant committed aggravated robbery only because the alleged victim could not find her phone."  Because these arguments are essentially the same as those addressed above, we decline to address them again.

In sum, because the district court could reasonably conclude that appellant was guilty of first-degree aggravated robbery beyond a reasonable doubt, the verdict should not be disturbed.

## II. Appellant's sentence for domestic assault should be reversed because both of his offenses arose from a single behavioral incident.

"[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses."  Minn. Stat. § 609.035, subd. 1 (2012).  Thus, if two or more offenses are committed as part of a single behavioral incident, a defendant may be sentenced for only one offense. *State v. Rivers*, 787 N.W.2d 206, 213 (Minn. App. 2010), *review denied* (Minn. Oct. 19, 2010).

Appellant argues, and the state agrees, that the district court erred by sentencing him for both offenses because the offenses arose out of the same behavioral incident.  Because we agree that both of the offenses arose out of a single behavior incident, we reverse the sentence for domestic assault and remand to the district court with instructions to vacate

that sentence.  *See State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006) (providing that Minn. Stat. § 609.035 contemplates that a defendant will be punished for the most serious of the offenses arising out of a single behavioral incident because imposing up to the maximum punishment for the most serious offense will include punishment for all offenses) (quotations omitted).

**Affirmed in part, reversed in part, and remanded.**