*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2044**

State of Minnesota,
Respondent,

vs.

Renard Rucker,
Appellant.

**Filed February 27, 2017
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-14-24675

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Max A. Keller, Lexie D. Stein, Keller Law Offices, Minneapolis, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Reilly, Judge; and Smith, Tracy M., Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant Renard Rucker challenges his first-degree criminal-sexual-conduct conviction, arguing that he received ineffective assistance of counsel, that the evidence

underlying his conviction is insufficient, and that the cumulative effect of the errors deprived him of the right to a fair trial. We affirm.

## FACTS

Respondent State of Minnesota charged appellant by complaint with three counts of first-degree criminal sexual conduct occurring between June 1, 2013 and August 18, 2014. The complaint alleged that appellant, the boyfriend of H.B.'s mother, engaged in sexual penetration with the victim, H.B., when appellant was over the age of 16; H.B. was under the age of 16 at the time of the sexual penetration; appellant resided with the victim; and appellant used force or coercion to accomplish the penetration.

The state presented the following evidence at a jury trial. On August 18, 2014, Crystal police officers responded to a report of ongoing sexual assaults committed by appellant against H.B. Appellant lived with H.B. and her family. H.B. reported that appellant sexually and physically abused her over the course of two years by forcing his penis into her vagina on multiple occasions, causing her pain. CornerHouse conducted a forensic interview of H.B., and she underwent a medical examination. The jury heard testimony from a number of witnesses, including H.B.'s mother, a Crystal police officer, a CornerHouse forensic interviewer, a medical examiner, and appellant's sister and nephew, with whom the family briefly lived. Appellant also testified in his own defense and denied the allegations. The jury returned a verdict finding appellant guilty of each of the three counts of first-degree criminal sexual conduct. The district court imposed a 201-month prison term for the offense of first-degree criminal sexual conduct, multiple acts of penetration of a victim under the age of 16 by a person with a significant relationship, but

2

did not adjudicate the remaining two offenses, which merged with the sentenced offense. Appellant filed a direct appeal.

Four months later, appellant filed a petition for postconviction relief in district court, seeking to vacate the conviction on the ground that he was denied effective assistance of counsel. Appellant moved to stay his appeal before the Minnesota Court of Appeals, pending resolution of postconviction proceedings in district court. We granted appellant's motion to stay and remanded the matter to the district court for consideration of appellant's postconviction petition. The district court subsequently denied appellant's motion for postconviction relief, concluding that appellant failed to satisfy the two-part *Strickland* test governing ineffective-assistance-of-counsel claims. We thereafter dissolved the stay and reinstated the instant appeal.

## D E C I S I O N

**I. Appellant received effective assistance of counsel.**

### a. We apply the two-part *Strickland* test to an ineffective-assistance-of-counsel challenge.

"We review the denial of postconviction relief based on a claim of ineffective assistance of counsel de novo because such a claim involves a mixed question of law and fact." *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013). A criminal defendant has a constitutional right to the effective assistance of counsel. *Fort v. State*, 861 N.W.2d 674, 677 (Minn. 2015). We analyze an ineffective-assistance-of-counsel claim under the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington. Nissalke v. State*, 861 N.W.2d 88, 93-94 (Minn. 2015) (citing *Strickland v. Washington*,

3

466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984)).  To prevail on his claim, appellant must demonstrate that "(1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  *Id.* at 94 (quoting *Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068).  A reviewing court need not address both parts of the *Strickland* test if one is determinative.  *Hawes*, 826 N.W.2d at 783.

"Under the deficiency prong, [appellant] must show by a preponderance of the evidence that his counsel's performance . . . fell below an objective standard of reasonableness."  *State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999).  In Minnesota, we assume an attorney's performance meets this standard "when he provides his client with the representation of an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under the circumstances."  *Id.* (quotations omitted).  The first prong is thus "necessarily linked to the practice and expectations of the legal community."  *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S. Ct. 1473, 1482 (2010) (noting that the "proper measure of attorney performance remains simply reasonableness under prevailing professional norms").  Under the second *Strickland* prong, appellant must show by a preponderance of the evidence that but for his counsel's errors, the outcome of the proceedings would have been different.  *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

4

**b. Appellant did not receive ineffective assistance of counsel where his trial counsel declined to contact an aggrieved juror after trial.**

Appellant argues that his trial counsel's performance fell below an objective standard of reasonableness because the attorney failed to investigate an aggrieved juror's claim of harassment. Following trial, a juror sent letters to the court and to counsel, alleging that he felt intimidated, abused, and harassed by his fellow jurors. Appellant moved for a *Schwartz* hearing to impeach the jury's verdict under Minnesota Rule of Criminal Procedure 26.03, subdivision 20(6), and *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960), which the district court denied on the ground that appellant failed to make a prima facie showing that he was entitled to relief.

A defendant may request a motion for a mistrial based on juror misconduct. Minn. R. Crim. P. 26.03, subd. 20(6). The purpose of the hearing, commonly known as a *Schwartz* hearing, "is to determine whether a jury verdict is the product of misconduct." *State v. Greer*, 635 N.W.2d 82, 93 (Minn. 2001). However, before a motion for a *Schwartz* hearing will be granted, the defendant must make a prima facie showing of juror misconduct. *State v. Pederson*, 614 N.W.2d 724, 730 (Minn. 2000); *State v. Larson*, 281 N.W.2d 481, 484 (Minn. 1979) (noting that the rule "implicitly requires [a] defendant to establish a prima facie case of jury misconduct before a *Schwartz* hearing is mandated"). To make a prima facie showing, "a defendant must submit sufficient evidence which, standing alone and unchallenged, would warrant the conclusion of jury misconduct." *Larson*, 281 N.W.2d at 484.

5

The district court denied appellant's request for a *Schwartz* hearing, reasoning that appellant failed to make a prima facie showing of juror misconduct. In its order denying petitioner's motion for postconviction relief, the district court determined that:

> [Appellant] has not provided any additional information to the Court indicating [the juror] may have been threatened, and thus the Court views this claim as an argumentative assertion without factual support. . . . The Court believes, in assessing the situation for reasonableness under the circumstances, [appellant's] counsel had no compelling basis to investigate further. It seems likely that if [the juror] were actually threatened, he would have conveyed this i[n] one of his voluminous and broad letters to the Court or Counsel. . . . In short, this claim has no merit.

We agree with the district court that appellant failed to demonstrate a prima facie showing of juror misconduct, and, therefore, his counsel's performance did not fall below an objective standard of reasonableness when he declined to further investigate the juror's harassment complaint.

With respect to the second *Strickland* element, appellant speculates that the outcome of the trial would have been different if his counsel had investigated the juror's claims. However, appellant has not presented any evidence establishing a prima facie case of juror misconduct, or of any objectively unreasonable conduct on the part of his attorney. *See Larson*, 281 N.W.2d at 484 (placing burden on defendant); *see also Chambers v. State*, 769 N.W.2d 762, 764 (Minn. 2009) ("We have generally required that the petitioner factually support his claims with admissible evidence."); *see also State v. Usee*, 800 N.W.2d 192, 201 (Minn. App. 2011) ("[A] *Schwartz* hearing is inappropriate where the claim of misconduct is wholly speculative and not based on any evidence reasonably suggesting

6

that misconduct had occurred." (quotation omitted)). Therefore, we determine that the district court did not abuse its discretion by denying appellant's motion for relief on the ground that he received ineffective assistance of counsel.

### c. Appellant did not receive ineffective assistance of counsel where his trial counsel failed to review a transcript before publication to the jury.

Appellant argues that his trial counsel's assistance was ineffective because he failed to review the CornerHouse transcript and the videotape before the evidence was published to the jury, to ensure that the agreed-upon redactions were properly removed. During trial, the state presented a video of H.B.'s CornerHouse interview, along with a typewritten transcript. The videotape was redacted, but the transcript inadvertently included a statement from H.B. that appellant abused her mother, and that he had lost parental rights to his other children. The video also contains a section of the interview where H.B. references appellant's abusive history with her mother. Appellant's trial counsel did not ask that this section be redacted.

After the disclosure, the parties approached for a bench conference, at which time the state argued that the remarks and comments made in the video were admissible as relationship evidence under Minnesota Statutes section 634.20 (2016). The district court agreed with the state, determining that H.B.'s statements regarding appellant's past domestic abuse were admissible as relationship evidence because they gave "context to his sexual abuse of H.B., and the probative value of each act was not substantially outweighed by the danger of unfair prejudice." On appeal, appellant argues that the evidence constitutes inadmissible *Spreigl* evidence. *See State v. Spreigl*, 272 Minn. 488, 139

7

N.W.2d 167 (1965); Minn. R. Evid. 404(b).  Appellant argues that his trial counsel was ineffective for failing to object to the statements on *Spreigl* grounds and for not reviewing the videotape and transcripts prior to the jury viewing them to ensure that they were properly redacted and did not mention prior conduct.

In cases involving domestic abuse, Minnesota Statutes section 634.20 governs the admissibility of evidence related to a defendant's prior incidents of domestic abuse.  *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004).  This evidence is commonly referred to as "relationship evidence."  *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010).  Relationship evidence is distinct from *Spreigl* evidence because it evinces "prior conduct between the accused and the alleged victim and may be offered to illuminate the history of the relationship, that is, to put the crime charged in the context of the relationship between the two."  *McCoy*, 682 N.W.2d at 159.  A defendant is presumed to be aware that his prior relationship with the victim, "particularly in so far as it involves ill will or quarrels," may be offered against him at trial.  *Id*. at 159-60 (quotation omitted).  Consequently, "the stringent procedural requirements" associated with *Spreigl* evidence "do not apply to section 634.20 [relationship] evidence."  *State v. Meyer*, 749 N.W.2d 844, 849 (Minn. App. 2008).

Here, the district court determined that:

> [E]vidence of [appellant's] previous acts of domestic conduct gives context to his sexual abuse of H.B., and the probative value of each act was not substantially outweighed by the danger of unfair prejudice. . . . Here, admitting the relationship evidence helped the jury understand the relationship [appellant] had with H.B. and perhaps helped explain why she delayed reporting the crime and her credibility in explaining

8

the course of events. The probative value of the relationship evidence was not outweighed by any potential prejudice to [appellant].

We agree. Appellant's prior acts of domestic violence against H.B.'s family members carried probative value and provided context to the relationship between appellant and H.B. Therefore, appellant has not shown by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness under the first *Strickland* prong by failing to object to the evidence on *Spreigl* grounds.

Moreover, the district court concluded that even if some of the jurors read the statements in the transcript or heard H.B. discuss the abuse on the video, "the second prong of the *Strickland* test would not be met" because there was "ample corroborative evidence to convict" appellant. Again, we agree. Appellant has not demonstrated beyond a reasonable doubt that the outcome of the trial would have been different, but for his trial counsel's error. Ample evidence supports the jury's verdict. Furthermore, the district court gave a limiting instruction to the jury, advising the jurors that:

> Mr. Rucker is not being tried for and may not be convicted of any offense other than the charged offenses. You are not to convict him on the basis of anything other than the charged offenses. To do so would be unjust.

We presume that jurors follow limiting instructions with respect to the proper use of evidence. *See State v. Ali*, 855 N.W.2d 235, 249-50 (Minn. 2014) (holding that reviewing courts assume that jurors follow a court's instruction). The district court judge's curative instruction rendered harmless any prejudice that may have occurred.

9

In sum, appellant is not entitled to relief on the ground that his trial counsel provided ineffective assistance of counsel by failing to ensure that the statements were not published to the jury.

### d. Appellant did not receive ineffective assistance of counsel where his trial counsel failed to preserve the voir dire record.

Appellant argues that his attorney was ineffective because he failed to preserve the record regarding the racial composition of the jury. The jury pool assigned to appellant's case included a racially diverse group of people. However, the jurors randomly assigned to answer questions during the voir dire portion of the trial were all from the same race. Appellant argues that his attorney "failed to note which jurors the State peremptorily struck," precluding him from raising a *Batson* challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986) (forbidding the striking of prospective jurors based solely on their race).

Appellant's argument fails. Minnesota courts are committed "to insuring that the systems used are increasingly inclusive in the hope that the faces of the people in the jury room will soon mirror the faces of the people in the community at large." *State v. Fairbanks*, 842 N.W.2d 297, 304 (Minn. 2014) (quotation omitted); *Hennepin County v. Perry*, 561 N.W.2d 889, 897 (Minn. 1997)). But "while defendants are entitled to a fair and impartial jury, they are not entitled to one of a particular racial composition or one that precisely mirrors the racial makeup of the community." *Fairbanks*, 842 N.W.2d 304 (citing *Williams*, 525 N.W.2d at 542).

10

The district court and counsel extensively questioned the potential jurors during the voir dire process. The fact that all of the members of the voir dire panel were of the same race does not support a determination that any particular racial group was peremptorily excluded from the jury on the basis of race. *See State v. Martin*, 773 N.W.2d 89, 101 (Minn. 2009) (stating framework for *Batson* challenge). Thus, even if the defense counsel had preserved the record from voir dire, appellant would not be able to demonstrate that the state used a peremptory challenge to strike a person of color. Accordingly, appellant cannot satisfy either of the *Strickland* prongs.

## II. Sufficient evidence supports appellant's conviction.

Our review of a sufficiency-of-the-evidence challenge is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005) (quotation omitted). A reviewing court must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Caldwell*, 803 N.W.2d 373, 384 (Minn. 2011) (quotation omitted). "This is especially true whe[n] resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). The verdict will not be disturbed "if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012).

Appellant challenges the sufficiency of the evidence underlying his criminal-sexual-conduct conviction, a violation of Minnesota Statutes section 609.342, subdivision 1(h)(iii) (2016). To support a conviction of this charge, the state must prove beyond a reasonable doubt that:

> (h) the actor has a significant relationship to the complainant, the complainant was under 16 years of age at the time of the sexual penetration, and:
>
> (i) the actor or an accomplice used force or coercion to accomplish the penetration;
>
> (ii) the complainant suffered personal injury; or
>
> (iii) the sexual abuse involved multiple acts committed over an extended period of time.

Minn. Stat. § 609.342, subd. 1(h).

The record establishes that H.B. was between 14 and 15 years old during the relevant timeframe. She had a significant relationship with appellant, who lived with the family for nearly 13 years as her mother's boyfriend. Appellant sexually and physically abused H.B. on multiple occasions between June 2013 and August 2014 by forcing his penis into her vagina, causing her pain. On several occasions, appellant physically hit H.B. when she tried to resist. The evidence sufficiently supports appellant's conviction because the jury could reasonably conclude that he was guilty of the charged crime.

Appellant claims the evidence was insufficient because the state's case rested upon the testimony of a single witness. However, Minnesota law recognizes that a conviction can rest upon the testimony of a single, credible witness. Minn. Stat. § 609.347, subd. 1 (2016) (stating that in a prosecution for a first-degree criminal-sexual-conduct crime, "the

12

testimony of a victim need not be corroborated"); *see State v. Johnson*, 568 N.W.2d 426, 435 (Minn. 1997) ("It is a well-established rule that a conviction can rest upon the testimony of a single credible witness."). And here, testimony from other fact witnesses supported H.B.'s testimony. H.B.'s mother testified that she found appellant in H.B.'s bedroom dressed only in his boxer shorts and believed he may have been drunk. The CornerHouse forensic interviewer testified that it is common for an abuse victim to delay reporting. The CornerHouse interviewer referred H.B. for a medical examination, and the medical examiner testified that H.B.'s statements were consistent with the CornerHouse interview. While H.B. was the primary witness, other witnesses corroborated her testimony.

The jury heard evidence from several witnesses, including appellant, who denied the charges. The jury credited H.B.'s testimony. It is not the role of this court on appeal to reweigh the evidence or to assess witness credibility. *See State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009) ("Our precedent does not permit us to re-weigh the evidence."). Deferring to the jury's assessment of witness credibility and assuming that "the jury believed the state's witnesses and disbelieved any evidence to the contrary," *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013), we determine that the evidence was sufficient to sustain appellant's first-degree criminal-sexual-conduct conviction. Given the heavy burden appellant must carry to overturn a conviction, *State v. Vick*, 632 N.W.2d 676, 690 (Minn. 2001), we conclude that appellant's conviction is supported by sufficient evidence.

**III.    Appellant is not entitled to a new trial on the basis of cumulative error.**

Appellant argues that he is entitled to a new trial because the cumulative effect of the errors deprived him of his right to a fair trial.  "In rare cases, . . . the cumulative effect of trial errors can deprive a defendant of his constitutional right to a fair trial" and warrant reversal.  *State v. Davis*, 820 N.W.2d 525, 538 (Minn. 2012).  "The test is whether the effect of the errors considered together denied appellant a fair trial."  *State v. Valentine*, 787 N.W.2d 630, 642 (Minn. App. 2010).  Because we conclude that no error occurred, we do not reach this argument.

**Affirmed.**